# UNITED STATE DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Rukayatu Bello, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Case No. 1:11-cv-02106 |
| | ) | |
| v. | ) | Judge: Colleen Kollar-Kotelly |
| | ) | |
| Howard University, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT HOWARD UNIVERSITY'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) & (6) AND 28 U.S.C. SECTION 1367(c)

Daniel I. Prywes (D.C. Bar 324393)
Ian L. Barlow (D.C. Bar No. 998500)
BRYAN CAVE LLP
1155 F Street, N.W.
Washington, D.C.  20004
(202) 508-6000
daniel.prywes@bryancave.com
ian.barlow@bryancave.com

Dated:  January 6, 2012

*Counsel for Defendant
Howard University*

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY ......................................................................... 1

THE COMPLAINT ................................................................................................ 2

      A.    FACTUAL ALLEGATIONS OF THE INDIVIDUAL PLAINTIFFS ...................3

      B.    PLAINTIFFS' CAUSES OF ACTION ...................................................6

ARGUMENT ...................................................................................................... 9

I.     PLEADINGS STANDARDS AND RULE 12(B)(6) ........................................... 9

II.    ALL THE FEDERAL CLAIMS SHOULD BE DISMISSED ........................................ 11

      A.    PLAINTIFFS' TITLE VII CLAIMS ARE BARRED BECAUSE THEY
           NEVER FILED AN ADMINISTRATIVE CHARGE WITH THE EEOC...........11

      B.    42 U.S.C. SECTION 1981 DOES NOT PROVIDE A REMEDY FOR
           SEXUAL HARASSMENT.................................................................12

      C.    PLAINTIFFS' CLAIMS UNDER TITLE IX FAIL BECAUSE PLAINTIFFS
           DO NOT AND CANNOT ALLEGE THAT THE UNIVERSITY HAD THE
           REQUIRED NOTICE OF BRIGHT-ABU'S HARASSMENT PRIOR TO
           ANY OF THE ACTS ALLEGED IN THE COMPLAINT ...................................13

III.    THERE IS NO DIVERSITY JURISDICTION, AND NO CAUSE FOR THE
      COURT TO EXERCISE SUPPLEMENTAL JURISDICTION ....................................... 18

IV.    DEFENDANT BRIGHT-ABU WAS NOT ACTING WITHIN THE SCOPE OF
      HIS EMPLOYMENT WHEN HE ENGAGED IN SEXUAL CONDUCT FOR HIS
      OWN GRATIFICATION ........................................................................ 19

V.     PLAINTIFFS' NEGLIGENCE CLAIMS IN COUNT II SHOULD BE DISMISSED ... 22

VI.    COUNT III, ALLEGING INTENTIONAL INFLICTION OF EMOTIONAL
      DISTRESS, SHOULD BE DISMISSED.......................................................... 25

VII.   COUNT IV, ALLEGING NEGLIGENT INFLICTION OF EMOTIONAL
      DISTRESS, SHOULD BE DISMISSED.......................................................... 28

VIII.  THE DCHRA SEXUAL-HARASSMENT CLAIM IN COUNT V SHOULD BE
      DISMISSED ..................................................................................... 31

IX.    COUNTS VI AND VII, ALLEGING ASSAULT AND BATTERY, SHOULD BE
       DISMISSED ...................................................................................................................... 36

CONCLUSION............................................................................................................................. 36

Defendant Howard University (the "University") submits this memorandum in support of its motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) & (6), and pursuant to the supplemental-jurisdiction provisions of 28 U.S.C. Section 1367(c).

## Introduction and Summary

Plaintiffs are five former student-employees at the University who seek to hold the University liable for sexual "physical and verbal assaults" committed by their former supervisor, defendant George Bright-Abu ("Bright-Abu"). The Complaint against the University is deeply flawed and should be dismissed for a multitude of reasons.

1. <u>Lack of Subject-Matter Jurisdiction</u>.   All of the federal causes of action pled in the Complaint fail to state a claim upon which relief can be granted and should be dismissed. There is no diversity jurisdiction on the state-law claims, because several of the Plaintiffs are non-diverse with the University. Once the federal claims are dismissed, there is no reason for the Court to exercise supplemental jurisdiction. Therefore, the case should be dismissed in its entirety.

2. <u>Lack of Vicarious Liability</u>.   Plaintiffs allege that the University is liable for Bright-Abu's sexual misconduct because he was acting within the scope of his employment. That contention is legally unsound, since the Complaint alleges that Bright-Abu was motivated by sexual desire, and not by any desire to further his employer's interests.

3. <u>Judicial Estoppel</u>.   Plaintiff Woodson alleges that she told a University manager about Bright-Abu's assaultive "tendencies" toward her on September 1, 2010, and that the University is therefore liable under a negligent-supervision theory for Bright-Abu's subsequent misconduct. However, this allegation is directly contrary to the prior sworn testimony of Plaintiff Woodson in the criminal trial of Bright-Abu. She testified there that she did not notify anyone other than

Bright-Abu's secretary about Bright-Abu's misconduct until <u>after</u> all the other alleged misconduct by Bright-Abu occurred.   Plaintiffs are judicially estopped from relying on a contradictory allegation that Woodson complained to a University supervisor in September 2010 about Bright-Abu.

4.   <u>Other Claims</u>.   Plaintiffs' other claims (intentional infliction of emotional distress, negligent infliction of emotional distress, DCHRA sexual harassment, assault, and battery) suffer from numerous deficiencies and should be dismissed.   These include the Complaint's (a) failure to plead necessary elements; (b) failure to plead more than conclusory allegations, as required by *Twombly* and *Iqbal*; and (c) expiration of the applicable statutes of limitations for certain claims. These are described in greater detail below.

### The Complaint

In this case, five Plaintiffs assert seven counts against two defendants:  (1) the University, and (2) its former employee, George Bright-Abu ("Bright-Abu").   However, the facts are not complex.

Each of the five Plaintiffs was a work-study student employed by the University and assigned to work in the University's Founders Library.   (Complaint ¶ 12.)   Although the Complaint alleges that this Court has diversity jurisdiction (as well as federal-question jurisdiction) over this dispute (*id*. ¶ 8), there is not complete diversity.  Four of the five Plaintiffs resided at all relevant times in the District of Columbia (Complaint ¶¶ 1-5), and listed District of Columbia addresses in the caption of the Complaint.   The University is also located in the District of Columbia and has its principal place of business here.  (*Id.* ¶ 6.)

Plaintiffs' claims all arise from their allegations that Bright-Abu committed physical or verbal assaults, and sexually harassed them. However, the individual claims differ in material ways.

A.     Factual Allegations of the Individual Plaintiffs

1.  Woodson.  Plaintiff Mercedes Woodson alleges that, on or about September 1, 2010, Bright-Abu "on numerous occasions engaged in unwanted touching of Ms. Woodson's back and breasts, flirted with Ms. Woodson while at work, and made several degrading propositions of a sexual nature." (Complaint ¶ 16.)  However, all of Woodson's claims are based on events occurring on a single day, September 1, 2010. (*Id.* ¶¶ 48, 64, 76, 86, 100, 106.)  Woodson did not complain to the police about Bright-Abu until April 21, 2011. (*Id.* ¶ 19.)

Woodson alleges that she complained about Bright-Abu's conduct (a) on September 1, 2010, to a "Non-party Howard University employee, Mr. Thomas, who is a supervisor in the Founders Library and a Security Guard in the Founders Library," and (b) on September 2, 2010, to a secretary and two other University employees. (Complaint ¶ 18.)  She also alleges that she joined the other Plaintiffs at a meeting on April 26, 2011 with Dr. Arthuree Wright (Director of the Founders Library) to complain about Bright-Abu. (*Id.* ¶ 20.)

However, during the July 2011 criminal trial of Bright-Abu, Woodson testified that she never reported Bright-Abu's conduct to anyone besides Bright-Abu's secretary until <u>after</u> Bright-Abu assaulted Plaintiff Bello on April 20, 2011.  Specifically, Woodson testified that, on September 1, 2010, she told "Vanessa" (Bright-Abu's secretary) that Bright-Abu had touched her. (Ex. A, Trial Tr. 20 [July 21, 2011].)  Vanessa did not tell her to "go[] tell anyone," but had Woodson known that "something else would happen" later involving Bright-Abu, "I would have done something about it." (Ex. A, Trial Tr. 20 [July 21, 2011].)  Woodson chose not to complain

to anyone else in September 2010 and make a "big deal about it" because she feared it "may mess up my work study" arrangements (*id.* at 28), and she "needed the money." (*Id.* at 20, 28.) She added that after Bello told Woodson in April 2011 that Bright-Abu had assaulted her, Woodson told her: "I apologize because had I said something back then, then possibly that wouldn't have happened to her." (*Id.* at 27.)

When Superior Court Judge Marisa Demeo rendered her judgment convicting Bright-Abu, she described Woodson's testimony as follows:

> Miss Woodson, after this [September 1, 2010 assault] occurred, immediately told an individual named Vanessa who worked at the library, but Miss Woodson decided not to report it further for a number of reasons [including] she really needed the job at the library because . . . she was not relying on anyone else to pay for her school or bills.

(Exhibit B, Tr. 14 [July 22, 2011]) (emphasis added.)  Judge Demeo explained that she found Ms. Woodson's explanation of the reasons for her reporting delay to be credible, and therefore did not accept the defense's challenge to Woodson's credibility on account of Woodson's delay. (*Id.* at 14-15.)

Neither Woodson, nor any of the other Plaintiffs, allege that Bright-Abu engaged in any improper conduct after they complained about Bright-Abu at the April 26, 2011 meeting with Dr. Wright. (In fact, the University promptly suspended Bright-Abu and then terminated him shortly thereafter.)

2. Bello.  Plaintiff Rukayatu Bello alleges that Bright-Abu "physically and verbally assaulted" her on April 20, 2011 and "several other occasions." (Complaint ¶ 21.)  However, all her claims arise from events on a single day, April 20, 2011. (*Id.* ¶¶ 49, 65, 77, 88, 102, 108.) On that day, Bright-Abu engaged in "unwanted touching of Ms. Bello's hair and back," and "tried to kiss Ms. Bello and hugged her while he was sexually aroused." (*Id.* ¶ 21.)  Bright-Abu

also on "numerous occasions" "flirted" with her and made "several degrading propositions of a sexual nature." (*Id.*)

After a trial held in Superior Court in July 2011, Bright-Abu was convicted of "two counts of misdemeanor sexual abuse and one count of simple assault against Ms. Bello and Ms. Woodson." (Complaint ¶ 32.)

Bello alleges that she reported Bello's misconduct to University employees on April 21 and 25, 2011, and to the Director of the Library (Dr. Arthuree Wright) on April 26, 2011. (*Id.* ¶¶ 22, 23, and 25.) Bello does not allege that she reported Bright-Abu's misconduct to any other University employee prior to April 21, 2011, nor does she allege any recurrence of Bright-Abu's conduct after her first complaint on April 21, 2011.

3. <u>Oni-Orisan</u>. Plaintiff Olayinka Oni-Orisan does not allege that Bright-Abu ever assaulted her, either physically or verbally. Rather, the Complaint alleges that Oni-Orisan "witnessed" Bright-Abu "physically and verbally assault Ms. Bello," which "offended" her and "made [her] afraid to go to his office alone." (*Id* ¶ 26.) The Complaint does not say when Oni-Orisan witnessed this conduct, but it was presumably on April 20, 2011 when the Complaint alleges that Bello was assaulted. (*Id.* ¶¶ 102, 108.) Oni-Orisan attended the April 26, 2011 meeting with Dr. Wright (the Library Director) to complain about Bright-Abu (*id.* ¶ 27), but there is no allegation that she ever complained about Bright-Abu to anyone at an earlier time.

4. <u>Rashid and Singleton</u>. The allegations of Plaintiffs Fatima Rashid and Kera Singleton are nearly identical. Neither allege that they were physically assaulted or harassed. They both allege that "on several occasions during the 2010-2011 academic year" they were "verbally sexually assaulted" when Bright-Abu "flirted" with them and on made "inappropriate and unwelcomed" comments such as "Do you have a boyfriend?" and "Are you having sex you're

5

your boyfriend?" (Complaint ¶¶ 28, 30.) The Complaint does not indicate how many such comments were made, or when they started. Ms. Rashid and Ms. Singleton attended the April 26, 2011 meeting with Dr. Wright (the Library Director) to complain about Bright-Abu (*id.* ¶¶ 29, 31), but there is no allegation that either ever complained previously about Bright-Abu to anyone.

In sum, none of the Plaintiffs except Woodson allege that they complained about Bright-Abu's conduct to any University manager until April 26, 2011. Woodson's allegation that she did so on September 1, 2010 contradicts her sworn testimony used to convict Bright-Abu at his criminal trial.

     B.    <u>Plaintiffs' Causes of Action</u>

    1.  <u>Federal Claims</u>. The only federal claims asserted in the Complaint are in Count V, where Plaintiffs allege that they were subjected to a hostile work environment in violation of (a) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* (b) 42 U.S.C. Section 1981, and (c) Title IX, Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* (Complaint ¶ 85.)

With respect to the Title VII claim, Plaintiffs do not allege that they ever filed an administrative charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"). The University is not aware of any such charge.

With respect to the claim under 42 U.S.C. Section 1981, the Complaint does not allege any discrimination based on race. Plaintiffs' only allegations are based on sexual assaults and sexual harassment. (Complaint ¶¶ 16, 21, 26, 28, 30.)

With respect to the Title IX claim, no one except Plaintiff Woodson alleges that they complained about Bright-Abu's conduct to a University supervisor until April 26, 2011, and none alleges any continued misconduct by Bright-Abu afterwards. While Ms. Woodson alleges

that she complained to a "supervisor" named "Mr. Thomas" (who was a security guard) on September 1, 2010, she does not allege that this person supervised Bright-Abu or had authority to take corrective action. (Complaint ¶ 17.) In addition, as noted above, Ms. Woodson's allegation is contradicted by her previous trial testimony.

2. "Scope of Employment" Claims. In Count I of the Complaint, Plaintiffs seek a declaratory judgment that Bright-Abu was "acting in the scope of his employment" during the alleged "incidents." (Complaint ¶ 38.) However, the Complaint never alleges that Bright-Abu was acting in furtherance of the University's interests when he "verbally and sexually assaulted" the Plaintiffs. Instead, Plaintiffs allege that Bright-Abu was "motivated by sexual desire" when he did so. (*Id.* ¶¶ 86, 88, 90, 92, 94.)

No specific claim is asserted in Count I, but the "scope of employment" allegation is repeated by Plaintiffs when they allege specific torts in several other Counts.

3. Negligence. Plaintiffs allege in Count II of the Complaint that the Defendants are each liable for "negligence" on account of Bright-Abu's conduct toward Plaintiffs.

The only "negligence" claim in Count II involving Woodson relates to the events of September 1, 2010 (when Woodson was "assaulted") (Complaint ¶ 48), and the only claim involving Bello relates to the events of April 20, 2011 (when Bellow was "assaulted"). (*Id.* ¶ 50.) The other three Plaintiffs allege that the University is liable in negligence for events occurring "on several occasions" that are not identified. (*Id.* ¶¶ 51-56.)

Plaintiffs assert two "negligence" theories against the University. *First,* they allege that the University is vicariously liable for Bright-Abu's tortious conduct because he was "acting in the scope of his employment." (Complaint ¶¶ 48, 50, 52, 54, 56.) *Second,* they allege that the University "directly breached its duty of care to all Plaintiffs by continuing to employ Defendant

Bright-Abu after Defendant Howard University had been put on notice of Defendant Bright-Abu's physical and verbal sexual assault tendencies." (*Id.* ¶ 57.) Along the same lines, they allege that the University is liable for "failing to take reasonable protective measures," and for "failing to adequately enforce its sexual harassment policy." (*Id.* ¶¶ 58, 59.)

4. <u>Intentional Infliction of Emotional Distress</u>. Count III of the Complaint alleges that Bright-Abu engaged in "extreme and outrageous conduct" toward each of the Plaintiffs (Complaint ¶¶ 63, 65, 67, 69, 71), and that the University is liable because Bright-Abu was allegedly "acting in the scope of his employment." (*Id.* ¶¶ 64, 66, 68, 70, 72.) Plaintiffs allege, without any elaboration, that each one "sustained severe emotional distress as a direct and proximate result of Defendants' conduct." (*Id.* ¶ 73.)

5. <u>Negligent Infliction of Emotional Distress</u>. Plaintiffs allege in Count IV of the Complaint that Bright-Abu's conduct "created a zone of danger" which caused each of the Plaintiffs "to fear for her safety." (Complaint ¶¶ 64, 66, 68, 70, 72.) Without any elaboration, Plaintiffs allege that this conduct caused "serious and verifiable emotional distress." (*Id.* ¶ 82.)

Plaintiffs do not allege in Count IV that Bright-Abu was acting in the scope of his employment. Instead, they allege that the University is liable because its "direct breaches of its duty of care" created a zone of danger as to all Plaintiffs. (Complaint ¶ 81.)

6. <u>DCHRA Sexual Harassment</u>. In addition to the federal discrimination claims described above, Count V of the Complaint alleges that Bright-Abu and the University are liable for sexual harassment under the District of Columbia Human Rights Act ("DCHRA"). D.C. Code § 2-1401 *et seq*.

The only allegation of "sexual harassment" toward Woodson occurred "on September 1, 2010." (Complaint ¶ 86.) This lawsuit was not filed until more than one year later (November 28, 2011).

Count V alleges that sexual harassment toward Bello occurred "[o]n April 20, 2011." (Complaint ¶ 88.) The Complaint alleges that the remaining three Plaintiffs (Oni-Orisan, Rashid, and Singleton) were sexually harassed "[o]n several occasions" during the 2010-2011 academic year, and that harassment "created a hostile working environment." (*Id.* ¶¶ 88, 90, 92, 94, 95.) However, no further explanation is given of the number of "occasions" or the severity of any of Bright-Abu's behavior toward Plaintiffs Oni-Orisan, Rashid, or Singleton.

7. <u>Civil Assault and Battery</u>. In Count VI (Assault) and Count VII (Battery) of the Complaint, Woodson and Bello allege that the University is liable for Bright-Abu's assault and battery of them on September 1, 2010 and April 20, 2011 respectively, because Bright-Abu was "acting in the scope of his employment." (Complaint ¶¶ 100-103, 106-09.)

**Argument**

**I.      PLEADINGS STANDARDS AND RULE 12(b)(6)**

Fed. R. Civ. P. 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." In two rulings, the U.S. Supreme Court tightened the pleading standards under Fed. R. Civ. P. 8(a), with implications for motions to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).

Under the *Twombly/Iqbal* standard, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked

assertion[s]' devoid of 'further factual enhancement.'" *Iqbal,* 129 S. Ct. at 1949 (citing *Twombly,* 550 U.S. at 557). As the Supreme Court ruled in *Iqbal,* "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 129 S. Ct. at 1950.

The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 129 S. Ct. at 1949. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal,* 129 S. Ct. at 1949 (quoting *Twombly,* 550 U.S. at 557). A complaint must be dismissed if the factual allegations have not "nudged [plaintiffs'] claims across the line from conceivable to plausible." *Twombly,* 550 U.S. at 570. The "doors of discovery" do not "unlock" "for a plaintiff armed with nothing more than conclusions." *Iqbal,* 129 S. Ct. at 1950.

Under Fed. R. Civ. P. 12(b)(6), a court should dismiss a suit "for failure to state a claim upon which relief can be granted" where the plaintiff has not stated an actionable claim even if all of the complaint's factual allegations are taken as true and those allegations are construed in the light most favorable to the plaintiff. *Gilvin v. Fire,* 259 F.3d 749, 756 (D.C. Cir. 2001); *Pitney Bowes, Inc. v. United States Postal Serv.,* 27 F. Supp. 2d 15, 19 (D.D.C. 1998). While the court must construe the complaint in plaintiff's favor, it "need not accept inferences drawn by [the] plaintif[f] if such inferences are unsupported by the facts set out in the Complaint." *Kowal v. MCI Commc'ns Corp.,* 16 F.3d 1271, 1276 (D.C. Cir. 1994). The court is also not bound to accept the legal conclusions of the plaintiff. *Taylor v. FDIC,* 132 F.3d 753, 762 (D.C. Cir. 1997).

Although courts are restricted from considering matters "outside" the pleadings in determining whether a complaint fails to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), they may consider "any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record." *Arencibia v. 2401 Restaurant Corp.*, 699 F. Supp. 2d 318, 323 (D.D.C. 2010).[1]

## II.   ALL THE FEDERAL CLAIMS SHOULD BE DISMISSED

In Count V of the Plaintiffs' Complaint, styled as "Sexual Harassment (Hostile Work Environment)," Plaintiffs allege that their "claim is brought pursuant to . . . Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., 42 U.S.C. § 1981, and Title IX, Education Amendments of 1972, 34 C.F.R. part 106." (Complaint ¶ 85.) Each of these federal-question claims fail as a matter of law.

### A.   The Title VII Claims are Barred Because Plaintiffs Never Filed an Administrative Charge with the EEOC

Under Title VII, before suing in court, Plaintiffs were required to file a "charge" of discrimination with the EEOC within 300 days of the last event of discrimination. 42 U.S.C. § 2000e-5(e). "Charges shall be in writing under oath or affirmation." 42 U.S.C. § 2000e-5(b).

The Complaint does not allege that any of the Plaintiffs filed an administrative "charge" of discrimination with the EEOC. To the best of the University's knowledge, they did not do so.

When a charge has not been filed, a Title VII claim should be dismissed. *E.g., Smith-Thompson v. District of Columbia*, 657 F. Supp. 2d 123, 131 (D.D.C. 2009). The requirement of

---

[1]   *See, e.g., Navab-Safavi, v. Broadcasting Bd. of Governors*, 650 F. Supp. 2d 40, 50 (D.D.C. 2009) (citing authorities), *aff'd*, 637 F.3d 311 (D.C. Cir. 2011); *Uhar & Co., Inc. v. Jacob*, 710 F. Supp. 2d 45, 49 n.5 (D.D.C. 2010); *Marshall v. Honeywell Tech. Solutions, Inc.*, 536 F. Supp. 2d 59, 65 (D.D.C. 2008); *Hinton v. Corrections Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009); *Keith v. United States R.R. Ret. Bd.*, Civ. No. 02-1054(RBW), 2006 U.S. Dist. LEXIS 50598, at *9 (D.D.C. July 25, 2006).

a timely EEOC charge is a "strict requirement." *Elhusseini v. Compass Group USA, Inc.*, 578 F. Supp. 2d 6, 16 (D.D.C. 2008).  In addition, plaintiffs must exhaust their administrative remedies at the EEOC before filing suit.  *Mwabira-Simera v. Howard University,* 692 F. Supp. 2d 65, 71 (D.D.C. 2010).  "Courts have uniformly held that the procedural requirements of Title VII must be strictly applied." *Elhusseini*, 578 F. Supp. 2d at 17.

Since Plaintiffs did not file "charges" with the EEOC and have not exhausted their administrative remedies, their Title VII claim in Count V should be dismissed.

**B.      42 U.S.C. Section 1981 Does Not Provide a Remedy for Sexual Harassment**

As a matter of law, Plaintiffs also cannot pursue their claims for sexual harassment under 42 U.S.C. Section 1981, which prohibits race discrimination.[2]

It is well settled that Section 1981 does not "provide a remedy for sex ... discrimination." *Saad v. Burns, Int'l Sec. Servs., Inc.*, 456 F. Supp. 33, 37 (D.D.C. 1978) (citing *Runyan v. McCrary*, 427 U.S. 160, 167 (1976)).  In the words of the Supreme Court, "42 U.S.C. § 1981 is in no way addressed to" sexual or gender discrimination. *Runyon*, 427 U.S. at 167.  Courts in this District have therefore dismissed sex-discrimination claims pled under Section 1981. *See, e.g.*, *Pyne v. District of Columbia*, 468 F. Supp. 2d 14, 22 n.2 (D.D.C. 2006) (sex and gender discrimination claims brought under Section 1981 "must fail" because Section 1981 "only refers to racial discrimination" and does not "prohibit discrimination on the basis of gender"); *Brown v.*

---

[2]      Section 1981 states, in relevant part, as follows:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property <u>as is enjoyed by white citizens</u> . . . .

42 U.S.C. § 1981(a) (emphasis added.)

*District of Columbia*, 251 F. Supp. 2d 152, 163 n.6 (D.D.C. 2003) (declining to analyze sex discrimination claims brought under Section 1981, because "it is well established that 42 U.S.C. § 1981 does not provide a cause of action for sex discrimination") (citing *Runyon*).

Accordingly, Section 1981 may not serve as a basis for Plaintiffs' sexual-harassment claims, and the Section 1981 claims in Count V should be dismissed as a matter of law.

### C.    Plaintiffs' Claims Under Title IX Fail Because Plaintiffs Do Not and Cannot Allege That the University Had the Required Notice of Bright-Abu's Harassment Prior to Any of the Acts Alleged in the Complaint

Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, prohibits sex discrimination by educational institutions that receive federal funding.[3]  A private cause of action has been recognized by the Supreme Court. *Cannon v. University of Chicago*, 441 U.S. 677, 717 (1979).

In *Gebser v. Lago Vista Independent School District*, 524 U.S. 274, 290 (1998), the Supreme Court explained that "the express remedial scheme under Title IX is predicated upon notice to an 'appropriate person' and an opportunity to rectify any violation."  Therefore, an educational institution can not be held liable for damages under Title IX "unless an official who at a minimum has [1] <u>authority</u> to address the alleged discrimination and [2] <u>to institute corrective measures</u> on the [institution's] behalf has [3] <u>actual knowledge</u> of discrimination in the [institution's] programs and [4] <u>fails adequately to respond</u>."  524 U.S. at 292 (emphasis

---

[3]    20 U.S.C. § 1681(a) provides that, subject to certain exceptions:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program receiving Federal financial assistance . . .

Title IX does not authorize suits against individuals, like Bright-Abu. *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009); *Tyrrell v. Seaford Union Free Sch. Dist.*, 792 F. Supp. 2d 601, 622 n.5 (E.D.N.Y. 2011).

added).[4]  These requirements are necessary elements of a private cause of action under Title IX.

*Papelino v. Albany College of Pharmacy*, 633 F.3d 81, 89 (2d Cir. 2011); *Frazier v. Fairhaven*

*Sch. Comm.*, 276 F.3d 52, 66 (1st Cir. 2002).

The Complaint fails to plead these elements of a Title IX claim.  It alleges that "[o]n or

about September 1, 2010, Ms. Woodson reported Defendant Bright-Abu's "inappropriate actions

to a Non-party Howard University employee, Mr. Thomas, who is a supervisor in the Founder's

Library and a Security Guard in the Founders Library." (Complaint ¶ 17.)  As discussed below,

Plaintiffs should be judicially estopped from advancing this allegation.  However, even if it is

considered, Plaintiffs do not allege that "Mr. Thomas," who is described as a "security guard"

(*id.* ¶ 17), supervised Bright-Abu or otherwise had "<u>authority</u> to address the alleged

discrimination" and "<u>to institute corrective measures</u> on the [institution's] behalf." *Gebser*, 524

U.S. at 292 (emphasis added).[5]

Therefore, Count V of the Complaint fails to plead the necessary elements of a Title IX

claim since the purported complaint by Woodson on September 1, 2010 to an alleged supervisor

named "Mr. Thomas" does not allege that he had supervisory authority over Bright-Abu or

authority to take corrective measures.[6]

---

[4]      In this case, Plaintiffs pled only a private cause of action for damages under Title IX, and
are not seeking injunctive relief.  (Complaint, at p. 17.)  There would be no grounds for any
injunctive relief, since the Complaint does not allege that Bright-Abu remains at the University
or that Plaintiffs still work under his supervision.

[5]      The Complaint does not even allege that "Mr. Thomas" "fail[ed] adequately to respond."
*Gebser*, 524 U.S. at 292.  The Complaint also does not allege that Howard University received
federal funding, but the University does not rely on that omission alone.  Furthermore, any notice
given to a security guard is insufficient to constitute notice to an "appropriate individual" for
Title IX purposes. *Ross v. Corporation of Mercer University*, 506 F. Supp. 2d 1325, 1352 n.43
(M.D. Ga. 2007).

[6]      *See, e.g., Williams v. Board of Regents of the University Sys. of Georgia*, 477 F.3d 1282,
1293-94 (11th Cir. 2007) (affirming Rule 12(b)(6) dismissal of Title IX claim against Board of

While the Complaint alleges that Plaintiffs complained about Bright-Abu to the Library Director on April 26, 2011 (Complaint ¶¶ 20, 25, 27, 29, 31), the Complaint does not allege that the Director failed to institute corrective measures, or that any discriminatory conduct occurred toward them after their meeting with the Library Director. Therefore, a Title IX claim cannot be based on the report to the Library Director on April 26, 2011, since all the challenged conduct occurred beforehand.[7]

Furthermore, Plaintiffs are judicially estopped from relying on the allegation that Ms. Woodson complained on September 1, 2010 about Bright-Abu's conduct to a purported supervisor named "Mr. Thomas." At the criminal trial of Bright-Abu, which was initiated on the

---

Regents when the court could not find "any allegations that an 'appropriate person' with the Board of Regents had 'actual knowledge of discrimination . . . and failed to respond'"); *Pegues v. Baker University*, Civ. No. 11-cv-2136 (KHV), 2011 U.S. Dist. LEXIS 107708, at *7 and n.5 (D. Kan. Sep. 23, 2011) (citing *Gebser*, 524 U.S. at 286, for proposition that "[i]nterpretation of Title IX informs and instructs interpretation of Title VI and vice versa," and stating that to "survive defendant's motion to dismiss [the Title VI claim], the complaint must allege that an appropriate person had actual notice of, and was deliberately indifferent to, discrimination which was so severe, pervasive and objectively offensive that it deprived plaintiff of access to the educational benefits provided by defendant") (further citation omitted); *Albiez v. Kaminski*, Civ. No. 09-cv-1127, 2010 U.S. Dist. LEXIS 59373, at *14 (E.D. Wis. June 14, 2010) (stating that "[i]f a plaintiff fails to allege sufficient facts [concerning any element of a Title IX claim as set forth in *Gebser*] he or she cannot survive a motion to dismiss"); *Doe v. Allentown Sch. Dist.*, Civ. No. 06-cv-1926, 2009 U.S. Dist. LEXIS 19418, at *14 (E.D. Pa. Mar. 2, 2009) (denying motion for leave to file amended complaint because amendment would be futile where claim under Title IX was not supported by any allegation that the party notified of the alleged discrimination had authority to take corrective action to end the discrimination). *See Liu v. Striuli*, 36 F. Supp. 2d 452, 466 (D.R.I. 1999) (dismissing claim where neither the financial-aid director nor the chair of the history department were supervisors with "authority to take corrective action" to end discrimination by a modern languages professor); *Litman v. George Mason University*, 131 F. Supp. 2d 795, 799 (E.D. Va. 2001) (alerting one professor to harassment committed by another professor did not give the university actual knowledge of the harassment; there was no showing that the professor "had supervisory authority over the harasser"), *aff'd in part, rev'd in part on other grounds*, 92 Fed. Appx. 41 (4th Cir. 2004).

[7]     Plaintiffs have also all failed to allege sufficient facts to show that Bright-Abu's conduct created an actionable hostile environment. *See* Part VIII, *infra*. *Papelino*, 633 F.3d at 89.

basis of Woodson's police complaint in April 2011 (Complaint ¶ 19), Woodson testified that she complained to no one except Bright-Abu's secretary until after the assault on Bello (occurring on April 20, 2011).[8] (Ex. A, Trial Tr. 20-28.) That sworn testimony, used to convict Bright-Abu, directly contradicts the allegations in the Complaint about the alleged complaint to a "Mr. Thomas."

"Judicial estoppel prevents a person who states facts under oath during the course of a trial from denying those facts in a second suit, even though the parties in the second suit may not be the same as those in the first." *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1047 (8th Cir. 2006) (quoting *Monterey Dev. Corp. v. Lawyer's Title Ins. Corp.*, 4 F.3d 605, 609 (8th Cir. 1993)). *See Moses v. Howard University Hosp.*, 567 F. Supp. 2d 62, 66 (D.D.C. 2008) ("Judicial estoppel is an equitable doctrine that prevents parties from abusing the legal system by taking a position in one legal proceeding that is inconsistent with a position taken in a later proceeding.") (citation omitted), *aff'd*, 606 F.3d 789 (D.C. Cir. 2010). The doctrine is applied "to prevent a party from playing fast and loose with the courts," particularly "'[t]o the extent that prior sworn statements are involved.'" *Konstantinidis v. Chen*, 626 F.2d 933, 937 (D.C. Cir. 1980) (quoting *Scarano v. Cent. R.R. Co.*, 203 F.2d 510, 513 (3d Cir. 1953)). *See Consolidated Edison Co. v. Herrington*, 752 F. Supp. 1082, 1087 (D.D.C. 1990), *aff'd*, 927 F.3d 1227 (Temp. Em. App. 1991).

---

[8]     In deciding this motion to dismiss, this Court can take judicial notice of testimony in other court proceedings. *See Hinton v. Shaw Pittman Potts & Trowbridge*, 257 F. Supp. 2d 96, 100 n.5 (D.D.C. 2003) (in deciding motion to dismiss, court reviewed trial transcripts from an earlier criminal case because "the court may take judicial notice of matters of a general public nature, such as court records, without converting the motion to dismiss into one for summary judgment") (citing *Baker v. Henderson*, 150 F. Supp. 2d 13, 15 (D.D.C. 2001), and *Dupree v. Jefferson*, 666 F.2d 606, 608 n.1 (D.C. Cir. 1981)).

The Supreme Court has explained that three factors "typically inform the decision whether to apply" the judicial-estoppel doctrine "in a particular case." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). These are as follows:

> First, a party's later position must be clearly inconsistent with its earlier position. ... Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled[.] ... A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*New Hampshire*, 532 U.S. at 750-751 (internal quotation and citations omitted). However, these factors are not "inflexible prerequisites" and do not set forth "an exhaustive formula for determining the applicability of judicial estoppel." 532 U.S. at 752.

The three factors all favor judicial estoppel in this case. First, Woodson's allegation in the Complaint about her report to a "Mr. Thomas" on September 1, 2010 directly contradicts her earlier, sworn trial testimony. *See pp. 3-4, supra.* Second, when rendering judgment, the trial judge in Bright-Abu's criminal trial expressly credited Woodson's testimony explaining why she did not complain to anyone besides Bright-Abu's secretary after the September 1, 2010 incident, and explaining why Woodson did so for the first time only after Bello was assaulted on April 20, 2011. (Ex. B, Trial Tr. 13-14 (July 22, 2011).) Third, Plaintiffs would unfairly obtain an advantage in this litigation in that the contradicted allegations are necessary to support Plaintiffs' Title IX claim as well as other claims. Accordingly, the Court should strike the allegations in paragraph 17 of the Complaint, and for this reason too dismiss the Title IX claims in Count V.

### III.   THERE IS NO DIVERSITY JURISDICTION, AND NO CAUSE FOR THE COURT TO EXERCISE SUPPLEMENTAL JURISDICTION

If the Court dismisses the federal claims in Count V of the Complaint, then Plaintiff's Complaint can only proceed if there is a basis for subject-matter jurisdiction other than federal-question jurisdiction (28 U.S.C. § 1331).

Plaintiffs allege in the Complaint that there is diversity jurisdiction under 28 U.S.C. Section 1332 (Complaint ¶ 8.)  However, that is not so because (as explained below) there is no "complete" diversity between the Plaintiffs and the Defendants.

The Supreme Court has "consistently interpreted § 1332 as requiring complete diversity: "In a case with multiple plaintiffs and multiple defendants, the presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original jurisdiction over the entire action." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005) (citations omitted).  *See Doe v. Exxon Mobil Corp.*, 654 F.3d 11, 71 (D.C. Cir. 2011) ("Complete diversity requires that no two parties on opposite sides of an action can be citizens of the same state.") (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 267 (1806)).

Here, four of the Plaintiffs reside in the District of Columbia according to the caption of the Complaint, and they allege that they were residents of the District of Columbia "at all relevant times."[9]  (Complaint ¶¶ 1, 3-5.)  The University is alleged to be "located in the District of Columbia" (*id.* ¶ 6), where it has it principal place of business.  For purposes of the diversity statute, the University is therefore a citizen of the District of Columbia, 28 U.S.C. § 1332(c)(1), and complete diversity is lacking.

---

[9]      Plaintiffs have the burden of pleading sufficient facts to support the Court's exercise of diversity jurisdiction. *See, e.g., Meng v. Schwartz*, 305 F. Supp. 2d 49, 55 (D.D.C. 2004) (in "an action invoking a court's diversity jurisdiction under § 1332, it is the invoking party's burden to show that … complete diversity exists").

Since there is neither federal-question nor diversity jurisdiction in this case, Plaintiffs' claims can only go forward if the Court decides to exercise its "supplemental jurisdiction" under 28 U.S.C. Section 1367. That statute provides that a "district court may decline to exercise supplemental jurisdiction over a claim . . . if . . .the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

Federal courts routinely decline to exercise "supplemental jurisdiction," and proceed to dismiss or remand lawsuits, once all claims that could originally have been filed in federal district court are dismissed. *E.g., Ibrahim v. Latham & Watkins*, 331 Fed. Appx. 757, 758 (D.C. Cir. 2009); *Shekoyan v. Sibley Int'l*, 409 F. 3d 414, 423-24 (D.C. Cir. 2005), *cert. denied*, 546 U.S. 1173 (2006); *Shaw v. District of Columbia*, Civ. No. 11-0946, 2011 U.S. Dist. LEXIS 133168, at **14-15 (D.D.C. Nov. 18, 2011); *Middlebrooks v. Bonner Kiernan Trebach & Crociata*, 671 F. Supp. 2d 61, 64 (D.D.C. 2009), *aff'd*, No. 09-7161, 2010 WL 2574158 (D.C. Cir. June 16, 2010).[10] There is no reason for the Court to proceed differently in this case, since the non-federal counts of the Complaint all involve routine claims under District of Columbia law, and the dismissal of this case is being sought at its outset.

Therefore, the Complaint should be dismissed in its entirety.

## IV. DEFENDANT BRIGHT-ABU WAS NOT ACTING WITHIN THE SCOPE OF HIS EMPLOYMENT WHEN HE ENGAGED IN SEXUAL CONDUCT FOR HIS OWN GRATIFICATION

Even if the Court does not dismiss this case in its entirety, it should dismiss the remaining Counts for failure to state a claim upon which relief can be granted.

---

[10]     *See Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under pendent jurisdiction – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims.").

Count I seeks a declaratory judgment that Bright-Abu was acting within the scope of his employment when he engaged in the alleged sexual assaults toward the Plaintiffs. (Complaint ¶ 42.) This Count should be dismissed because it seeks a declaration relating solely to past events that duplicate the allegations of the remaining Counts of the Complaint. It is redundant, and not a suitable use of the Court's discretionary authority to grant declaratory relief. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995) ("In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration").

However, since Plaintiffs' contention that Bright-Abu acted within the "scope of employment" serves as the basis for several of Plaintiffs' claims, we address that contention here.

Under District of Columbia law, an employee's misconduct is not within the scope of his employment if it is not done "in furtherance" of the employer's interest. *Boykin v. District of Columbia*, 484 A.2d 560, 561 (D.C. 1984). *See Schecter v. Merchants Home Delivery, Inc.*, 892 A.2d 415, 427 (D.C. 2006) ("the moment the agent turns aside from the business of the principal and commits an independent trespass, the principal is not liable. The agent is not then acting within the scope of his authority in the business of the principal, but in the furtherance of his own ends") (citation omitted).

This rule extends to circumstances, like those presented here, when an employee's "sexual attack . . . was not a direct outgrowth of [the employee's] instructions or job assignment" and instead was done for the "accomplishment of [the employee's] independent, malicious, mischievous and selfish purposes." *Boykin*, 484 A.2d at 562. The Complaint concedes that

Bright-Abu's actions were "motivated by sexual desire" (Complaint ¶¶ 86, 88, 90, 92, 94), and it never alleges that Bright-Abu's conduct was in "furtherance" of the University's interests.

In a recent case, Judge Boasberg granted a Rule 12(b)(6) motion to dismiss a claim that a manager was acting in the scope of employment when he raped an employee. *Doe v. Sipper*, Civ. No. 11-cv-875 (JEB), 2011 U.S. Dist. LEXIS 127763, at **9-14 (D.D.C. Nov. 4, 2011). Following a review of the case-law, Judge Boasberg explained that District of Columbia law has only found that a sexual assault occurs within the "scope of employment" in two circumstances, neither of which applies here. One circumstance is when the employee's job required the physical contact that led to the sexual assault, as in the case of a security guard inappropriately touching a suspected thief during a physical search. *Id.* at **10-11 (citing *Brown v. Argenbright Sec., Inc.*, 782 A.2d 752 (D.C. 2001)). The other circumstance is an assault arising from a "business-related dispute[]" that is the direct outgrowth of the employee engaging in job related activities, such as a physical attack occurring by a delivery person attempting to collect payment from a customer. *Doe v. Sipper*, 2011 U.S. Dist. LEXIS 127763, at **12-13 (citing *Lyon v. Carey*, 533 F.2d 649 (D.C. Cir. 1976)).

Since the Complaint does not (and could not) allege such facts, Bright-Abu's alleged acts were not within the scope of his employment and the Court should dismiss any claim based on that theory of liability. *Boykin*, 484 A.2d at 562 ("whether an employee is acting 'within the scope of his employment' becomes a matter of law for the court … if there is not sufficient evidence from which a reasonable juror could conclude that the action was within the scope of the employment"). *See Doe v. Sipper*, 2011 U.S. Dist. LEXIS 127763, at *8 (same).

**V.     PLAINTIFFS' NEGLIGENCE CLAIMS IN COUNT II SHOULD BE DISMISSED**

In a traditional negligence action, "a plaintiff must prove the existence of a duty of care owed by the defendant to him (or to a class of which he is a member), a breach of that duty by the defendant, and damage to the interests of the plaintiff, proximately caused by the breach." *Griffin v. Acacia Life Ins. Co.*, 925 A.2d 564, 575 (D.C. 2007).

In Count II of the Complaint, Plaintiffs allege that the University is liable to each of the Plaintiffs for "negligence," based on their contention that Bright-Abu was acting "in the scope of his employment." (Complaint ¶¶ 48, 50, 52, 54, 56.)  For the reasons stated in Part IV, *supra*, that theory of liability is legally insufficient where, as here, the University's employee allegedly engaged in behavior for his own sexual gratification, "motivated by sexual desire." (*Id.* ¶¶ 86, 88, 90, 92, 94.)  Therefore, to the extent that Count II is based on a "scope of employment" theory, it should be dismissed.

In Count II, Plaintiffs also contend that the University is liable in "negligence" for the injury caused by Bright-Abu because the University "continued to employ Defendant Bright-Abu after Defendant Howard University had been on notice of Defendant Bright-Abu's physical and verbal sexual assault tendencies." (Complaint ¶ 57.)  This theory of negligent-supervision liability is also legally insufficient for reasons common to all Plaintiffs, as well as for reasons specific to individual Plaintiffs.

In order to hold an employer liable for the negligent supervision of its employees, the plaintiff must be able to demonstrate that the employer previously "knew or should have known its employee behaved in a dangerous or otherwise incompetent manner, and that the employer, armed with that actual or constructive knowledge, failed to adequately supervise the employee." *Brown*, 782 A.2d at 760.  *See Sokos v. Hilton Hotels Corp.*, 283 F. Supp. 2d 42, 51-52 (D.D.C.

2003) (the plaintiff must present evidence that the employer "had some previous indication that [employee] could not perform an effective investigation") (quotation omitted).[11] This principle – requiring the employer's prior knowledge of misconduct – requires dismissal of Woodson's claims as well as that of all the other Plaintiffs.

*First*, the Complaint does not allege that the University had notice of Bright-Abu's "physical and verbal abuse tendencies" prior to the September 1, 2010 assault on Plaintiff Woodson. Therefore, the negligent-supervision claim of Woodson should be dismissed for failure to state a claim.[12]

*Second*, for the reasons stated above, Plaintiffs are judicially estopped from alleging that Woodson complained to a University supervisor ("Mr. Thomas") on September 1, 2010 (Complaint ¶ 17), because Woodson testified to the contrary under oath during Bright-Abu's criminal trial. If that alleged complaint to a supervisor is disregarded – as it should be for reasons discussed in Part II(C), *supra* – Plaintiffs are left with no allegation that the University supervisors had "actual or constructive notice" of Bright-Abu's tendencies before he engaged in his conduct toward the remaining Plaintiffs. *Brown*, 782 A.2d at 760 (negligent supervision claim dismissed where there was no evidence that a person with "supervisory authority" over the employee had knowledge of the conduct and "had an opportunity to stop it"); *Giles v. Shell Oil Corp.*, 487 A.2d 610, 613 (D.C. 1985). By April 26, 2011, when the five Plaintiffs first met with a supervisor to complain about Bright-Abu's conduct, all the tortious conduct alleged in the

---

[11]    The requirement of prior notice is consistent with the general negligence principle that a "duty" exists only where a risk was "reasonably foreseeable." *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 793 (D.C. 2011).

[12]    The only claimed negligent wrong toward Woodson alleged in Count II of the Complaint involve the events of September 1, 2010. (Complaint ¶ 48.)

Complaint had already occurred; there is no allegation that any such conduct continued afterwards. Therefore, the negligent supervision claims of all Plaintiffs should be dismissed.

Plaintiffs' allegation that the University did not prevent sexual harassment by Bright-Abu (Complaint ¶ 59) does not present a viable cause of action. A negligence claim cannot be based on an employer's failure to prevent sexual harassment *per se*. *Griffin*, 925 A.2d at 566-67 ("'A claim that an employer negligently supervised an employee who has sexually harassed a co-employee does not transmute sexual harassment into a common law tort'") (citation omitted). As the *Griffin* court explained, an employer has no common-law duty "to prevent the sexual harassment of an employee, when such conduct was not independently actionable under the common law prior to the enactment of the DCHRA." 925 A.2d at 576. *See Young v. Covington & Burling LLP*, 736 F. Supp. 2d 151, 164 (D.D.C. 2010).

The negligent-supervision claims of Plaintiffs Oni-Orisan, Rashid, and Singleton in Count II, based on the Universities alleged knowledge of Bright-Abu's "physical and verbal sexual assault tendencies," also fail to state a claim upon which relief can be granted because these Plaintiffs do not allege any injury cognizable in tort. Specifically:

- None of these three Plaintiffs allege that they were physically assaulted by Bright-Abu.

- Plaintiff Oni-Orisan alleges that she saw Bright-Abu "physically and verbally sexually assault Ms. Bello" (Complaint ¶ 26), but does not allege that she herself was ever physically or verbally assaulted.

- Plaintiffs Rashid and Singleton allege that they were "verbally sexually assaulted" based on allegations that Bright-Abu "flirted" with them, and made "comments . . . such as 'Do you have a boyfriend? Are you having sex with your boyfriend?" (Complaint ¶¶ 28, 30.)

However, an "assault" consists of "an intentional and unlawful attempt or threat, either by words or by acts, to do physical harm to the victim." *Etheredge v. District of Columbia*, 635 A.2d 908, 916 (D.C. 1993); *Youngbey v. District of Columbia*, 766 F. Supp. 2d 197, 218 (D.D.C. 2011) (same); *Pointer v. District of Columbia*, 736 F. Supp. 2d 2, 8 (D.D.C. 2010) (same).   Since Rashid and Singleton (as well as Oni-Orisan) do not allege any such attempt or threat by Bright-Abu to "do physical harm" to them, there was no tortious "assault" against them that the University may have failed to prevent through negligent supervision. *See District of Columbia v. Chinn*, 839 A.2d 701, 708 (D.C. 2003) ("use of the terms 'carelessly and negligently,' without more, are conclusory and do not raise a cognizable claim of negligence").   Therefore, their negligence claims in Count II for physical or verbal assaults should be dismissed.

## VI.   COUNT III, ALLEGING INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, SHOULD BE DISMISSED

In Count III, all five Plaintiffs allege that the University is liable for the tort of Intentional Infliction of Emotional Distress ("IIED") because Bright-Abu was acting "in the scope of his employment," and not on any other theory of liability.   (Complaint ¶¶ 64, 66, 68, 70, 72.) However, as shown in Part IV, *supra*, the Complaint fails to allege sufficient facts to support that contention.   Therefore, all tort claims (including Count III) seeking to hold the University liable on the "scope of employment" theory should be dismissed.

To establish an IIED claim, a plaintiff must demonstrate "(1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress." *Howard University v. Best*, 484 A.2d 958, 985 (D.C. 1984). Generally, the "tort requires conduct so 'outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Browning v. Clinton*, 292 F.3d 235, 249 (D.C. Cir. 2002) (citations

omitted). *See Purcell v. Thomas*, 928 A.2d 699, 711 (D.C. 2007). Even claims of "mental anguish" and "stress" do not rise to the level of "severe emotional distress" required by the case law." *Futrell v. Dep't of Labor Fed. Credit Union*, 816 A.2d 793, 808 (D.C. 2003). *See Manago v. District of Columbia*, 934 A.2d 925, 927 (D.C. 2007). The requirement of outrageousness is "'not an easy one to meet,'" especially "in an employment context." *Paul v. Howard University*, 754 A.2d 297, 307 (D.C. 2000) (citation omitted). IIED claims are frequently dismissed for failing to meet these stringent standards.[13]

The Plaintiffs' IIED claims fail to state a claim for a variety of reasons.

*First*, Woodson's IIED claim should be dismissed because it is time-barred. Her IIED claim is based entirely on her allegation that Bright-Abu assaulted her on September 1, 2010 (Complaint ¶¶ 16, 64), which was more than one year before this suit was filed. A claim for assault is subject to a one-year statute of limitations. D.C. Code § 12-301(4). Since Woodson's IIED claim is "inextricably intertwined" with the assault allegation, the IIED claim is also subject to a one-year limitations period and is time-barred. *Jovanovic v. US-Algeria Bus. Council*, 561 F. Supp. 2d 103, 114 (D.D.C. 2008) (Judge Kollar-Kotelly) (dismissing IIED claim that is "completely dependent" on a defamation claim that is time-barred under one-year limitations period for defamation claims), *aff'd*, 2009 U.S. App. LEXIS 8668 (D.C. Cir. Apr. 22, 2009); *Thong v. Andre Chreky Salon*, 634 F. Supp. 2d 40, 43 (D.D.C. 2009) (applying one-year limitation period to IIED claim based on an assault).

*Second*, the IIED claims of Woodson and Bello are insufficient to plead a viable IIED claim. Woodson's IIED claim is based entirely on one event on September 1, 2010 (Complaint ¶

---

[13]     *E.g., Minch v. District of Columbia*, 952 A.2d 929, 940, 941 (D.C. 2008); *Futrell v. Dep't of Labor Fed. Credit Union*, 816 A.2d 793, 808 (D.C. 2003); *Kerrigan v. Britches of Georgetowne, Inc.*, 705 A.2d 624, 628 (D.C. 1997).

63), and Bello's claim is based entirely on one event on April 20, 2011. (*Id.* ¶ 65.) However, an IIED claim for harassing behavior cannot be based on "a few isolated incidents." *Paul*, 754 A.2d at 308. The occurrence of a single assault by a supervisor, even when accompanied by other misconduct, has also been held to be insufficient to support an IIED claim. *Grandinson v. Wackenhut Servs., Inc.*, 514 F. Supp. 2d 12, 14, 17-18 (D.D.C. 2007) (finding that a physical assault by a supervisor, and other conduct by the supervisor and coworkers, did not make out an IIED claim). *See Beyene v. Hilton Hotels Corp.*, Civ. No. 08-01972 (HKK), 2011 U.S. Dist. LEXIS 112227, at *29 (D.D.C. Sept. 30, 2011).

*Third*, the Complaint alleges in conclusory terms that Bright-Abu engaged in "extreme and outrageous conduct" toward each of the remaining three Plaintiffs, which caused "severe emotional distress." (Complaint ¶¶ 68, 70, 72, 73.) However, these are merely "'labels and conclusions'" that are insufficient to plead a claim. *Iqbal*, 129 S. Ct. at 1949.

The only specific factual allegations of misconduct toward Plaintiffs Rashid and Singleton are that Bright-Abu "flirted" with them and made comments such as "Do you have a boyfriend? Are you having sex with your boyfriend?" (Complaint ¶¶ 28, 30.) While comments of that nature were inappropriate, they do not present "conduct so 'outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"[14] *Browning v. Clinton*, 292 F.3d at 249.

*Fourth*, the Complaint alleges that Plaintiff Oni-Orisan witnessed Bright-Abu physically and verbally sexually assault Plaintiff Bello (Complaint ¶ 26), but there is no allegation that Bright-Abu acted "intentionally or recklessly" to expose Oni-Orisan to those events, as required

---

[14]     As described in Part VIII, *infra*, such comments are not even sufficient to present a claim for sexual harassment under the DCHRA.

27

for an IIED claim. *Best*, 484 A.2d at 981 n.26. Nor are the allegations sufficient to show that

conduct consisting of "unwanted touching of Ms. Bello's hair and back," a hug, and an attempted

kiss (Complaint ¶ 21), when visible by Oni-Orisan, constituted sufficiently "outrageous" conduct

toward Oni-Orisan, going beyond "all possible bounds of decency" so as to state an IIED claim.

*Browning v. Clinton*, 292 F.3d 235 at 249.

For all these reasons, the IIED claims in Count III should be dismissed.

## VII.   COUNT IV, ALLEGING NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS, SHOULD BE DISMISSED

In Count IV of the Complaint, Plaintiffs attempt to repackage their intentional-tort claims

in the form of a claim for Negligent Infliction of Emotional Distress ("NIED"). Relying on their

allegations that Bright-Abu verbally and/or physically assaulted them (Complaint ¶¶ 16, 21, 28,

30, 68), Plaintiffs allege that Bright-Abu's conduct "created a zone of danger" which caused

each of the Plaintiffs "to fear for her safety," and which caused "serious and verifiable emotional

distress." (*Id.* ¶¶ 64, 66, 68, 70, 72, 82.) They further allege that the University is liable for

Bright-Abu's conduct because the University's "direct breaches of its duty of care created a zone

of danger which caused Plaintiffs to fear for their safety." (Complaint ¶ 81.)

None of the Plaintiffs can recover from Defendants for <u>negligent</u> infliction of emotional

distress, because Plaintiffs allege only <u>intentional</u> conduct by Bright-Abu (i.e., verbal and

physical assaults) as the basis for their claims. As this Court recently held when dismissing an

NIED claim, "[a]dding the word 'duty' and reiterating the allegations of intentional conduct are

insufficient to plead negligence based claims."[15] *Hunter v. District of Columbia,* Civ. No. 08-

303 (CKK), 2011 U.S. Dist. LEXIS 131451, at *37 (D.D.C. Nov. 15, 2011*).* A plaintiff "cannot

---

[15]   "'[I]t is impossible to negligently commit assault and/or battery as the states of mind are separate and incompatible.'" *Hunter*, 2011 U.S. Dist. LEXIS 131451 at *37 (quoting *District of Columbia v. Chinn*, 839 A.2d 701, 710 (D.C. 2003)).

recover[] under the guise of negligent infliction of emotional distress for what are really injuries caused by a previously occurring intentional tort." *Id.* at \*39.

These same principles apply when a plaintiff seeks sues an employer for NIED under the theory that the employer negligently supervised an employee who committed an intentional tort. As the D.C. Court of Appeals ruled in *Brown v. Argenbright,* 782 A.2d at 759 n. 9, an NIED claim can not proceed against an employer for its employee's "sexual assault" or "sexual misconduct," because that conduct was "an intentional tort." *See also* Part V, *supra*.

Plaintiffs' NIED claims are deficient for additional reasons. To state a claim for NIED, a plaintiff must allege facts showing:

> (1) the plaintiff was in the zone of physical danger; (2) the zone was created by the defendant's negligence; (3) plaintiff feared for [her] own safety; and (4) the resulting emotional distress was serious and verifiable.

*Hunter*, 2011 U.S. Dist. LEXIS 131451, at \*36-37.16

For the first NIED element, the defendant's actions must place the plaintiff "in danger of physical injury." *Hedgepeth*, 22 A.3d at 804. *See Williams v. Baker*, 572 A.2d 1062, 1067 (D.C. 1990) (tortfeasor "owes a duty of care to all persons who are physically endangered by the tortfeasor's negligent act, regardless of whether actual impact occurs"). A plaintiff must show that his "physical safety was <u>imminently</u> endangered." *McMillan v. Nat'l R.R. Passenger Corp.*, 648 A.2d 428, 434 (D.C. 1994) (emphasis added). There must be "immediate physical danger"

---

[16]    The D.C. Court of Appeals recently recognized an additional basis for NIED liability where the defendant has a relationship with the plaintiff "that necessarily implicates the plaintiff's emotional well-being . . . and there is an especially likely risk that the defendant's negligence would cause serious emotional distress to the plaintiff." *Hedgepeth*, 22 A.3d at 810-11. However, Plaintiffs did not proceed on this theory in their Complaint. The *Hedgepeth* court recognized that the doctor-patient relationship is one sort of relationship that would be subject to this rule, but suggested that an employer-employee or school-student relationship would not fall within its purview. 22 A.3d at 812 n.39.

to the plaintiff, and it is not enough for the plaintiff to fear that "sooner or later" she would be injured. *Id.*

Here, the Plaintiffs all allege that they suffered "serious and verifiable emotional distress." (Complaint ¶ 82.) However, there are no factual allegations to support this conclusory allegation.[17] It is a "naked assertion" that is "devoid of further factual enhancement," and thus insufficient to state a claim. *Iqbal*, 129 S. Ct. at 1949. All five Plaintiffs' NIED claims should therefore be dismissed.

The same is true for the allegations of Plaintiffs Rashid, and Singleton that they were placed in a "zone of danger" (Complaint ¶ 81) when Bright-Abu "flirted" with them and asked if they had boyfriends. (*Id.* ¶¶ 28, 30.) These allegations are insufficient to show that they were imminently "physically endangered" by Bright-Abu's conduct, and therefore fail to state a claim. *Hedgepeth*, 22 A.3d at 804; *McMillan*, 648 A.2d at 434.

Plaintiff Oni-Orisan also fails to allege any facts to show that anything done by Bright-Abu (including his behavior toward Ms. Bello, which Oni-Orisan allegedly observed) actually placed Oni-Orisan in a "zone of physical danger." *Jones v. Howard University*, 589 A.2d 419, 423 (D.C. 1991) (the plaintiff "must first establish that the x-rays or surgical procedure did in fact pose a danger to the safety of herself or her non-viable unborn twins") (emphasis added).

---

[17]    There can be no recovery for "trifling distress," or "transitory, non-recurring physical phenomena . . . such as dizziness, vomiting, and the like." *Williams*, 572 A.2d at 1068. Instead, there must be a "long-term mental disturbance." *Siegel v. Ridgewells, Inc.*, 511 F. Supp. 2d 188, 194 (D.D.C. 2007). "Serious and verifiable emotional distress" has been found to exist in cases where, for example, the plaintiffs "complained of debilitating fatigue, loss of motor control, persistent cognitive problems, extreme depression sometimes approaching paranoia, flu-like symptoms, shortness of breath, and a variety of other symptoms." *Bahura v. S.E.W. Investors*, 754 A.2d 928, 938 (D.C. 2000). Plaintiff Oni-Orisan's allegation that she was "visibly nervous" after seeing Bright-Abu "inappropriately touching Ms. Bello" (Complaint ¶ 26) falls short of the much higher standard need to show "serious and verifiable emotional distress."

There is no allegation that Bright-Abu threatened her, or any allegation that she was ever "in fact" in imminent physical danger.[18]   Therefore, her NIED claim is defective as well.

## VIII.   THE DCHRA SEXUAL-HARASSMENT CLAIM IN COUNT V SHOULD BE DISMISSED

Count V of the Complaint alleges that Bright-Abu subjected each of the Plaintiffs to a hostile and abusive working environment through sexual harassment, in violation of the DCHRA.   (Complaint ¶¶ 86, 88, 90, 92, 94.)   Plaintiffs allege that the University is liable for Bright-Abu's actions because the University continued "to employ Defendant Bright-Abu after Defendant Howard University had been on notice of Defendant Bright-Abu's physical and verbal sexual assault tendencies."[19]   (*Id.* ¶ 96.)

The DCHRA prohibits sex discrimination in employment.   D.C. Code § 2-1402.11(a)(1).   In order to establish a *prima facie* case of "hostile environment" claim under the DCHRA, a plaintiff must demonstrate that:

> (1) she is a member of a protected class; (2) she has been subject to unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) respondent superior.

*Purcell v. Thomas*, 928 A.2d 699, 710 (D.C. 2007) (quoting *Howard Univ. v. Best*, 484 A.2d 958, 978 (D.C. 1984)).

---

[18]      Plaintiff Oni-Orisan cannot pursue a NIED claim for any emotional distress resulting from her alleged observation of harm to Plaintiff Bello.   (Complaint ¶ 26.)   *Williams*, 572 A.2d at 1069 ("there can be no recovery for mental distress and its consequences resulting exclusively from observation of harm or danger to a third person").

[19]      Plaintiffs also allege that Bright-Abu was acting in the scope of his employment when he sexually harassed the Plaintiffs.   (Complaint ¶¶ 87, 89, 91, 93, 95.)   As noted in Part IV, *supra,* that is not so.   Courts have consistently recognized that a supervisor's sexual harassment of an employee is not within the scope of the supervisor's employment, and an employer's liability for a supervisor's sexual harassment has therefore been based on other principles.   *Faragher v. City of Boca Raton*, 524 U.S. 775, 793-94, 799, 802 (1998).

To establish "respondent superior," "complainants typically must demonstrate employer failure to discipline and restrain the conduct of harassing subordinates in order to establish vicarious liability for hostile work environment claims." *Psychiatric Inst. of Washington v. District of Columbia Comm'n on Human Rights*, 871 A.2d 1146, 1151 (D.C. 2005). *See Odeyale v. Aramark Mgmt. Servs. Ltd. P'ship*, 518 F. Supp. 2d 179, 183 (D.D.C. 2007) (to establish a *prima facie* case, the employer must demonstrate "that the employer knew or should have known of the harassment, and failed to act to prevent it").

Consistent with the standard under Title VII, a workplace is considered "hostile" only "when the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Barrett v. Covington & Burling, LLP*, 979 A.2d 1239, 1245 (D.C. 2009) (citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)). Harassment must consist of "'[m]ore than a few isolated incidents ['] . . . and genuinely trivial occurrences will not establish a prima facie case.'" *Nicola v. Washington Times Corp.*, 947 A.2d 1164, 1173 (D.C. 2008) (citation omitted). A "mere offensive utterance" is not actionable. *Lively v. Flexible Packaging Ass'n*, 830 A.2d 874, 890 (D.C. 2003).

All of the Plaintiffs' DCHRA claims should be dismissed because, as explained in Part IV above, pursuant to judicial-estoppel principles this Court should disregard the allegation in paragraph 17 of the Complaint that Plaintiff Woodson notified a University supervisor named "Mr. Thomas" on September 1, 2010 of Bright-Abu's "inappropriate actions." There is no other allegation in the Complaint that any University manager had any notice of Bright-Abu's harassing conduct until April 26, 2011, after which no further harassment is alleged to have occurred. Thus, Plaintiffs have not pled any basis for showing that the University "fail[ed] to

discipline and restrain the conduct of harassing subordinates" so as to establish vicarious liability for hostile work environment claims." *Psychiatric Institute*, 871 A.2d at 1151. Therefore, they have nothing to establish the University's liability for their DCHRA claim. (Complaint ¶ 96.)

Plaintiff Woodson's DCHRA claim should also be dismissed as time-barred under the DCHRA's one-year statute of limitations. D.C. Code § 2-1403.16(a). Her DCHRA claim is based entirely on her allegation that she was subject to a sexual assault by Bright-Abu on September 1, 2010. (Complaint ¶ 86; *see id.* ¶¶ 16, 47, 63.) Yet she did not file suit until November 28, 2011, more than one year after this discrete discriminatory act.

A "hostile environment" claim can reach back more than one year where there is cumulative conduct that creates a hostile environment over time, and there is an act of harassment toward the Plaintiff within the limitations period. *Lively*, 830 A.2d at 889. However, that is not the case where Woodson does not base her DCHRA claim on any event occurring after September 1, 2010.[20] Even if Woodson had done so, any claim arising out of the assault on September 1, 2010 would arise from a "discrete act" of discrimination and could not be included in a DCHRA claim arising from subsequent conduct within the one-year limitations period.

---

[20]    Elsewhere in the Complaint, Woodson alleges that Bright-Abu engaged on "numerous occasions engaged in unwanted touching of Ms. Woodson's back and breast, "flirted" with her, and made "several degrading propositions of sexual nature." (Complaint ¶ 16.) Woodson does not allege that any of these "occasions" occurred within the one-year period before this suit was filed. Moreover, Woodson does not allege that these events were "severe or pervasive," or were part of the hostile environment alleged in Count V. (Complaint ¶ 86.) Even if they are considered, the description is too vague to set forth an actionable hostile-environment claim. *Lively*, 830 A.2d at 893 n. 30 ("some of these incidents may have constituted 'a few isolated incidents,' . . . and thus were insufficient in and of themselves to make out a claim for sexual harassment"); *George v. Leavitt*, 407 F.3d 405, 416-17 (D.C. Cir. 2005). *See* n. 23, *infra*. Plaintiffs therefore have not alleged enough to show that their claims "cross the threshold" to being plausible, and not merely possible. *Iqbal*, 129 S. Ct. at 1949. *See Twombly*, 550 U.S. at 570 (a complaint should be dismissed where Plaintiffs have not "nudged their claims across the line for conceivable to plausible").

*Lively*, 830 A.2d at 889 ("discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges") (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002)).

Bello's claim under the DCHRA is also based entirely on sexual harassment occurring on a single day, April 20, 2011 (Complaint ¶ 89), during which Bright-Abu "engaged in unwanted touching of Ms. Bello's hair and back," and also "tried to kiss Ms. Bello and hugged her while sexually aroused." (*Id.* ¶ 21.) This one incident, on a single day, was an "isolated incident" of "offensive conduct" that does "not amount to actionable [workplace] harassment." *Barrett*, 979 A.2d at 1246 (quoting *Smith v. Jackson*, 539 F. Supp. 2d 116, 138 (D.D.C. 2008)).[21] The "'very nature [of a hostile work environment claim] involves <u>repeated conduct</u>.'" *Lively*, 830 A.2d at 889 (citation omitted) (emphasis added).

While a hostile environment may be established under Title VII for "isolated incidents,"[22] they must be "extremely serious." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Allegations, such as Bello's, involving a single touching incident have been found insufficient to state a hostile-environment claim. For example, in *Chavers v. Shinseki*, 667 F. Supp. 2d 116, 126 (D.D.C. 2009) (Judge Huvelle), the Court listed with approval several cases where "isolated incidents of nonconsensual physical contact" were found by "this Court and others have found to be insufficiently severe to sustain a hostile work environment claim." One case involved a co-worker who wrapped his arms around the plaintiffs' neck and body, and rubbed against the

---

[21]   *See Barrett*, 979 A.2d at 1246 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 n. 1 (1998) (the allegedly hostile incidents "must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive")).

[22]   The D.C. Court of Appeals has stated that "[w]e generally follow Title VII analysis in discrimination cases brought under the DCHRA." *Psychiatric Institute*, 871 A.2d at 1151 n. 2. *See Kumar v. District of Columbia Water & Sewer Authority*, 25 A.3d 9, 16 (D.C. 2011).

plaintiff as if to simulate sexual intercourse. *Tatum v. Hyatt Corp.*, 918 F. Supp. 5, 6-7 (D.D.C. 1994). *See Ramey v. Potomac Elec. Power Co.*, 468 F. Supp. 2d 51, 58 (D.D.C. 2006) ("Only in rare and extreme circumstances will one incident be held to create a hostile work environment."). Another involved a 90-second encounter where a co-worker made contact with plaintiff's breasts, hips, and buttocks in the presence of a supervisor, who did not intervene. *Paul v. Northrop Grumman Ship Sys.*, 309 Fed. App. 825, 826, 828 (5th Cir. 2009). Although it was inappropriate and led to a misdemeanor conviction, Bright-Abu's "touching" of Ms. Bello's hair and back, with a "hug" and attempted "kiss," are no more serious than the insufficient conduct in *Tatum* and *Paul*. Therefore, Bello fails to state a hostile-environment claim. The same is true of Woodson's DCHRA claim, which is based on a single incident on September 1, 2010 involving "unwanted touching of Ms. Woodson's back and breast." (Complaint ¶ 16.)

The DCHRA claims of Plaintiffs Oni-Orisan, Rashid, and Singleton are all based on the identical allegation that each was subjected "[o]n several occasions . . . to unwelcomed sexual harassment, based on her sex, which created a hostile and abusive working environment . . . materially affecting the conditions of her employment." (Complaint ¶¶ 90, 92.) These conclusory allegations are nothing more than "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949. Therefore, they should be dismissed for failure to satisfy basic pleading requirements under *Twombly/Iqbal*. Courts in this District routinely dismiss hostile-environment claims of this type,[23] and this Court should do so here.

---

[23]    *E.g.*, *Hunter v. District of Columbia Child & Family Servs. Agency*, 710 F. Supp. 2d 152, 156-57 (D.D.C. 2010) (applying *Iqbal* standard in holding that the complaint failed to plead an actionable hostile-environment claim); *Badibanga v. Howard University Hosp.*, 679 F. Supp. 2d 99, 102-03 (D.D.C. 2010) (applying *Iqbal* in dismissing hostile-environment claim under Rule 12(b)(6)); *Brookens v. Solis*, 635 F. Supp. 2d 1, 4 n.4 (D.D.C. 2009); *Arencibia v. 2401 Restaurant Corp.*, 699 F. Supp. 2d 318, 325 (D.D.C. 2010) (applying *Twombly* to dismiss a complaint where "Plaintiffs' generalized allegations of wrongdoing are too conclusory to

## IX.   COUNTS VI AND VII, ALLEGING ASSAULT AND BATTERY, SHOULD BE DISMISSED

In Count VI of the Complaint, Plaintiffs Woodson and Bello allege a claim for civil assault, based on the allegation that Bright-Abu "attempted and threatened to do physical harm" to Woodson on September 1, 2010 (Complaint ¶ 100) and that he did the same to Bello on April 20, 2011. (*Id.* ¶ 102.)  In Count VII of the Complaint, they allege that Bright-Abu committed a "battery" of each on the same dates. (*Id.* ¶¶ 106, 108.)  Plaintiffs Woodson and Bello both seek to hold the University liable on the basis of their claim that Bright-Abu was "acting in the scope of his employment." (*Id.* ¶¶ 107, 109.)

The Assault and Battery counts should be dismissed for two reasons.

*First*, Woodson's claims are time-barred, since the torts of assault and battery each have a one-year statute of limitations. D.C. Code § 12-301(4).  Woodson's claims arise from an assault on September 1, 2010, but she did not file suit until more than one year later on November 28, 2011.

*Second*, as a matter of law and as explained in Part IV, *supra*, Bright-Abu was not acting within the scope of his employment when he committed an assault or battery of Plaintiffs Woodson and Bello "motivated by sexual desire." (Complaint ¶¶ 86, 88.)

### Conclusion

For the foregoing reasons, the Complaint should be dismissed in its entirety.

---

constitute the basis for a claim"); *Koch v. Schapiro*, 699 F. Supp. 2d 3, 14 (D.D.C. 2010) (granting motion to dismiss hostile environment claim because the allegation that plaintiff was "repeatedly subject to abusive and discourteous treatment is too conclusory and insufficient to state a claim for relief"); *Middlebrooks v. Bonner Kiernan Trebach & Crociata*, 671 F. Supp. 2d 61, 63 (D.D.C. 2009) (dismissing claim where the allegation of discrimination was a "mere conclusory statement"), *aff'd*, No. 09-7161, 2010 WL 2574158 (D.C. Cir. June 16, 2010).

Respectfully submitted,

_____

Daniel I. Prywes (D.C. Bar 324393)
Ian L. Barlow (D.C. Bar No. 998500)
BRYAN CAVE LLP
1155 F Street, N.W.
Washington, D.C.  20004
(202) 508-6000
daniel.prywes@bryancave.com
ian.barlow@bryancave.com

Dated:  January 6, 2012             *Counsel for Defendant Howard University*

37

## CERTIFICATE OF SERVICE

I hereby certify that, on January 6, 2012, I caused the foregoing Defendant Howard University's Memorandum to be served by ECF electronic filing on:

Christal E. Edwards, Esq.
Edwards Legal Group, LLC
9701 Apollo Drive, Site 301
Largo, MD  20774

Steven Bullock, Esq.
Law Offices of Steven Bullock
440 12th Street, NE, Unit 106
Washington, D.C.  20002

*Counsel for Plaintiffs*

and by first-class mail, postage prepaid, to:

Mr. George Bright-Abu
6236 Oscar Court
Woodbridge, VA  22193

*Defendant*

_____
Daniel I. Prywes