# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Rukayatu Bello, *et al.,* | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Case No. 1:11-cv-02106 |
| | ) | |
| v. | ) | Judge: Colleen Kollar-Kotelly |
| | ) | |
| Howard University, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT HOWARD UNIVERSITY'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) & (6) AND 28 U.S.C. SECTION 1367(c)

Daniel I. Prywes (D.C. Bar 324393)
Ian L. Barlow (D.C. Bar No. 998500)
BRYAN CAVE LLP
1155 F Street, N.W.
Washington, D.C.  20004
(202) 508-6000
daniel.prywes@bryancave.com
ian.barlow@bryancave.com

Dated:  February 9, 2012

*Counsel for Defendant
Howard University*

Defendant Howard University (the "University") submits this reply memorandum in further support of its motion to dismiss the Complaint.

**Argument**

I.   **PLAINTIFFS HAVE CONCEDED NUMEROUS FLAWS IN THE COMPLAINT, AND IMPROPERLY SEEK TO ADVANCE NEW FACTUAL ALLEGATIONS IN THEIR OPPOSITION**

Plaintiffs' Opposition (ECF Dkt. No. 13) fails to respond to many of the deficiencies in the Complaint that the University identified in its Opening Brief. (ECF Dkt. No. 10.) Therefore, the Court should treat all such deficiencies as conceded. As this Court has ruled, "[i]n this Circuit, 'it is well understood ... that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.'" *Paul v. Didizian*, Civ. No. 11-00684 (CKK), 2011 U.S. Dist. LEXIS 120597, at *10 (D.D.C. Oct. 19, 2011) (quoting *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003), *aff'd*, 98 Fed. Appx. 8 (D.C. Cir. 2004). Moreover, the Court may treat such arguments as conceded "even when the result is dismissal of the entire case." *Bancoult v. McNamara*, 227 F. Supp. 2d 144, 149 (D.D.C. 2002).

At several points, Plaintiffs' Opposition also raises new allegations not contained in the Complaint.[1] The Court should disregard these new allegations. "In deciding whether to dismiss a claim under Rule 12(b)(6), the Court may only consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196

---

[1]   For example, Plaintiffs state that "[t]hrough appropriate discovery it will be revealed that [the [security] guard [to whom Plaintiff Woodson allegedly complained] was a victim of Defendant Bright-Abu as well and Defendant Howard University was notified of this incident prior to the incidents with Plaintiffs." (Opp. at 9 n. 1.)

(D.D.C. 2002) (citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624-25 (D.C. Cir. 1997) (further citations omitted)).  Therefore, "when Plaintiffs raise factual allegations" for the first time "in their Opposition" and those allegations "are not included in the pleadings, [they] cannot properly be considered by this Court on a motion to dismiss." *Fraternal Order of Police, D.C. Lodge 1, Inc. v. Gross*, Civ. No. 04-1531 (GK), 2005 WL 3201400, at *2 (D.D.C. Nov. 9, 2005).

## II.   ALL THE FEDERAL CLAIMS SHOULD BE DISMISSED

### A.   Plaintiffs Concede That the Complaint Fails to State a Claim Under Title VII and 42 U.S.C. Section 1981.

Plaintiffs do not contest the University's argument that their Title VII and Section 1981 claims in Count V should be dismissed.  (Opp. at 7.)  As the University urged in its Opening Brief (at 11), the Complaint's Title VII claim is deficient because it does not allege that an administrative charge has been filed with the EEOC, or that the administrative process has been exhausted.  42 U.S.C. § 2000e-5(e).  The claim under 42 U.S.C. Section 1981 is deficient because that statute's protections do not extend to sexual harassment.  (Opening Br. at 12.)

Plaintiffs state in their Opposition that Plaintiffs Woodson, Oni-Orisan, Rashid, and Singleton "will amend their complaint to remove, without, prejudice, all such claims as they pertain to the aforementioned individual plaintiffs."  (Opp. at 7.)  However, they have not filed any such amended Complaint.  Accordingly, this Court should dismiss the Title VII and Section 1981 claims in Count V of the Complaint.

The Court should also dismiss the Title VII and Section 1981 claims of Plaintiff Bello.  Her claims are subject to the same deficiencies as the other Plaintiffs.  It appears that Plaintiffs' counsel unintentionally omitted Ms. Bello's name when writing that Plaintiffs would drop the claims.  (Opp. at 7.)

**B.     The Complaint Does Not Plead the Necessary Elements of a Title IX Claim.**

     **1.     Plaintiffs Failed To Allege That the University Had the Necessary Notice of the Misconduct**

To establish a violation of Title IX, a plaintiff must establish that the alleged gender discrimination was known by an "appropriate person" with "at a minimum authority to address the alleged discrimination and to institute corrective measures," and that such person "fail[ed] adequately to respond." *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 292 (1998).

As explained in the Opening Brief (at 14), these are necessary elements of a Title IX claim. If they are not pled, the claim is subject to dismissal under Rule 12(b)(6). The University cited extensive case law for this proposition,[2] and Plaintiffs do not contest it in their Opposition.

---

[2]     *See, e.g., Williams v. Board of Regents of the University Sys. of Georgia,* 477 F.3d 1282, 1293-94 (11th Cir. 2007) (affirming Rule 12(b)(6) dismissal of Title IX claim against Board of Regents when the court could not find "any allegations that an 'appropriate person' with the Board of Regents had 'actual knowledge of discrimination . . . and failed to respond'"); *Pegues v. Baker University,* Civ. No. 11-cv-2136 (KHV), 2011 U.S. Dist. LEXIS 107708, at *7 and n.5 (D. Kan. Sep. 23, 2011) (citing *Gebser,* 524 U.S. at 286, for proposition that "[i]nterpretation of Title IX informs and instructs interpretation of Title VI and vice versa," and stating that to "survive defendant's motion to dismiss [the Title VI claim], the complaint must allege that an appropriate person had actual notice of, and was deliberately indifferent to, discrimination which was so severe, pervasive and objectively offensive that it deprived plaintiff of access to the educational benefits provided by defendant") (further citation omitted); *Albiez v. Kaminski,* Civ. No. 09-cv-1127, 2010 U.S. Dist. LEXIS 59373, at *14 (E.D. Wis. June 14, 2010) (stating that "[i]f a plaintiff fails to allege sufficient facts [concerning any element of a Title IX claim as set forth in *Gebser*] he or she cannot survive a motion to dismiss"); *Doe v. Allentown Sch. Dist.,* Civ. No. 06-cv-1926, 2009 U.S. Dist. LEXIS 19418, at *14 (E.D. Pa. Mar. 2, 2009) (denying motion for leave to file amended complaint because amendment would be futile where claim under Title IX was not supported by any allegation that the party notified of the alleged discrimination had authority to take corrective action to end the discrimination). *See Liu v. Striuli,* 36 F. Supp. 2d 452, 466 (D.R.I. 1999) (dismissing claim where neither the financial-aid director nor the chair of the history department were supervisors with "authority to take corrective action" to end discrimination by a modern languages professor); *Litman v. George Mason University,* 131 F. Supp. 2d 795, 799 (E.D. Va. 2001) (alerting one professor to harassment committed by another professor did not give the university actual knowledge of the harassment; there was no showing

Plaintiffs nonetheless argue that they satisfied the pleading requirement by the averment in the Complaint that Ms. Woodson reported Defendant Bright-Abu's misconduct on September 1, 2010 to a "supervisor" named "Mr. Thomas," as well as to other non-supervisory staff (including a security guard).[3]  (Opp. at 9.)

However, Plaintiffs' argument fails to address the University's key point:  there is no allegation in the Complaint that "Mr. Thomas" was the sort of "supervisor" who had "authority to address the alleged discrimination and to institute corrective measures." *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. at 292.  The Complaint does not indicate if "Mr. Thomas" was even in Defendant Bright-Abu's chain of command, whether he had any authority over Bright-Abu, whether he was in a subordinate role to Bright-Abu, or whether he worked in an unrelated area or function of the University's Library.[4]  Furthermore, there is no allegation in the Complaint that any of the other persons to whom Plaintiff Woodson now claims to have reported the misconduct (Opp. at 10) had "authority" to address the alleged discrimination.  As a result, the Complaint failed to plead a necessary element of a Title IX claim.[5]

---

that the professor "had supervisory authority over the harasser"), *aff'd in part, rev'd in part on other grounds*, 92 Fed. Appx. 41 (4th Cir. 2004).

[3]    Plaintiffs' Opposition clarifies ambiguous language in paragraph 17 of the Complaint by stating that "Mr. Thomas" was not a security guard.  (Opp. at 9.)

[4]    The University is not raising this deficiency as a mere technicality.  The University is not aware of any "supervisor" named "Mr. Thomas" in the University's Library, where Bright-Abu worked.

[5]    Plaintiff Woodson's allegation about her September 1, 2010 report to "Mr. Thomas" could not save Ms. Woodson's Title IX claim, even if accepted as true, because Woodson does not allege in Count V of the Complaint that an "appropriate person" at the University with "at a minimum authority to address the alleged discrimination" had notice of Bright-Abu's harassing conduct *before* his assault on her on September 1, 2010, or that Bright-Abu's misconduct toward her continued after that one incident.  (Complaint ¶ 86.)

Plaintiffs seek to avoid dismissal by hypothesizing that "discovery will lead to evidence that Defendant Howard University not only had the required notice of Defendant Bright-Abu's sexual harassment tendencies but also that they were deliberately indifferent to properly addressing Defendant Bright-Abu." (Opp. at 9.) This argument should be rejected for two reasons. First, the Complaint contains none of these allegations. Second, as the Supreme Court has made clear, the "doors of discovery" do not "unlock" "for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

Aside from the alleged report by Ms. Woodson to a "supervisor" on September 1, 2010, Plaintiffs' Complaint does not identify any other "notice" of Defendant Bright-Abu's misconduct to anyone at the University with "authority" to take "corrective action" until a meeting held on April 26, 2011 with Dr. Wright, the Library Director. Therefore, all Title IX claims of *all five Plaintiffs* relating to claims before that date should be dismissed. (Opening Br. at 14-15.)

Plaintiffs advance one final, desperate contention in their Opposition. They argue that the University's Library Director, Dr. Wright, failed to take appropriate corrective measures *after* Plaintiffs notified them on April 26, 2011 of Bright-Abu's misconduct, and that Plaintiffs were therefore "left with no other choice but to report the incidents to the District of Columbia police." (Opp. at 10.) This sequence is contradicted by the Plaintiffs' own Complaint. It alleges that Plaintiffs Woodson and Bello "filed a police report against Defendant Bright-Abu with the District of Columbia Police Department on or about *April 21, 2011*," and then met with Dr. Wright afterwards "[o]n or about *April 26, 2011*." (Complaint ¶¶ 19-20, 24-25) (emphasis added.)

Moreover, there are no allegations in the Complaint that could even support an inference that Dr. Wright failed to take appropriate corrective measures after being notified of Bright-

Abu's alleged misconduct.[6]  If the Plaintiffs had some basis to allege that Dr. Wright failed to take adequate remedial measures, and that such failure resulted in harm to any of the Plaintiffs, they could have done so.  But they did not make any such allegation.  Accordingly, the Title IX claims should be dismissed.

### 2. Judicial Estoppel Bars Plaintiff Woodson From Alleging That She Notified Anyone Other than Bright-Abu's Secretary Before April 2011.

As explained in the Opening Brief (at 15-17), Plaintiffs should also be judicially estopped from claiming that Ms. Woodson notified a "supervisor" at the University about Bright-Abu's misconduct on September 1, 2010.  Absent such an allegation, the Title IX claims of all five Plaintiffs cannot survive because none have alleged any other facts to show that an "appropriate person" with "at a minimum authority to address the alleged discrimination and to institute corrective measures" had knowledge of Bright-Abu's conduct before they were subject to sexual misconduct by him.  (*See* Opening Br. at 14-15.)

In its Opening Brief, the University set forth Plaintiff Woodson's sworn testimony at Bright-Abu's criminal trial.  She testified then that she told Bright-Abu's secretary (Vanessa) in September 2010 that Bright-Abu had touched her, and Woodson then gave an elaborate explanation at the trial why she did not tell anyone else:  she did not do "something about it" because she feared that "may mess up my work study" arrangements, and she "needed the money."  (Opening Br., Ex. A, Trial Tr. 20, 22, 27-28.)  Yet now, Woodson inconsistently alleges that she complained back in September 2010 to a supervisor named "Mr. Thomas." (Complaint ¶ 17.)

---

[6]  Plaintiffs argue in their Opposition that the University "continued to employ" Bright-Abu after learning of his misconduct (Opp. at 6; Complaint ¶ 57), but the Complaint contains no allegation that the University continued to employ Bright-Abu after the Plaintiffs met with Dr. Wright on April 26, 2011.

Plaintiffs do not seriously dispute that the allegations in the Complaint contradict Woodson's trial testimony. As an excuse, they argue that "Plaintiff Woodson did not have an opportunity [at trial] to elaborate in detail every last person she told about the improper encounter with Defendant Bright Abu." (Opp. at 11.) Yet there is nothing to support that contention in the trial transcript. Plaintiffs' contention also ignores the key point: Woodson elaborately explained at trial why she did *not* report the misconduct to anyone besides Bright-Abu's secretary, which is directly contrary to her present position.

Plaintiffs retreat to their contention that Woodson's testimony was "not intentional." (Opp. at 11.) But they provide no support or explanation. Woodson's testimony under oath, at a criminal trial where Bright-Abu's liberty was at stake, was obviously not a casual occasion. If judicial estoppel could be avoided on this slender basis, then it would be an empty doctrine since any witness could claim that he or she "accidentally" gave false testimony. Plaintiffs advance no legal authority for their position. Woodson's contradictory allegations represent precisely the type of "playing fast and loose with the courts" that the doctrine of judicial estoppel is designed to prevent. *Konstantinidis v. Chen*, 626 F.2d 933, 937 (D.C. Cir. 1980).

Finally, Plaintiffs do not contest that the contradiction gives them an unfair advantage in the litigation. Instead they argue that "it does not give *Defendant Howard University* any unfair advantage in litigation because Defendant Howard University has declared that 'Mr. Thomas' is a security guard." (Opp. at 11-12) (emphasis added.) This is wrong factually, since the University has not asserted that there was a "Mr. Thomas" who was a security guard. But more importantly, Plaintiffs mistake the controlling legal principle. Judicial estoppel is proper where "a party's later position" is "clearly inconsistent with its earlier position." *New Hampshire v.*

*Maine*, 532 U.S. 742, 750 (2001). Here, it is Plaintiffs – not the University – that took an earlier inconsistent position, and the University will be prejudiced by the contradiction.

For all these reasons, the Court should dismiss the Title IX claims of all five Plaintiffs.

### III.   IF THE FEDERAL CLAIMS ARE DISMISSED, THE STATE-LAW CLAIMS SHOULD ALL BE DISMISSED PURSUANT TO 28 U.S.C. SECTION 1367(C).

As discussed above, Plaintiffs have failed to state a viable claim under any federal law. Furthermore, Plaintiffs do not dispute that the Court lacks diversity jurisdiction in this case. (Opening Br. at 21.)

If the Court dismisses all the federal claims, Plaintiffs' Opposition offers no reason why the Court should not follow the routine practice in this District of dismissing all state law claims pursuant to 28 U.S.C. Section 1367(c). (Opening Br. at 19.)

Plaintiffs' only argument is that the Court should "remand" the case rather than dismiss it. (Opp. at 13.) That contention ignores the fact that this case was originally filed by Plaintiffs in federal court. There is no cause or possibility of "remanding" this suit to the D.C. Superior Court because a remand can only occur when a case was first filed in state court and then removed to federal court. 28 U.S.C. § 1447(c).

### IV.   BRIGHT-ABU WAS NOT ACTING WITHIN THE SCOPE OF HIS EMPLOYMENT WHEN HE ENGAGED IN SEXUAL MISCONDUCT FOR HIS OWN GRATIFICATION

Several of Plaintiffs' tort claims under District of Columbia law are predicated on their allegation that Defendant Bright-Abu was acting within the scope of his employment when he engaged in sexual misconduct. The University urged in its Opening Brief that Plaintiffs' "scope of employment" claims should be dismissed because Plaintiffs had not alleged any way in which Bright-Abu's sexual assaults or other actions were taken "in furtherance" of the employer's interest. *Boykin v. District of Columbia*, 484 A.2d 560, 561 (D.C. 1984). (Opening Br. at 20-

21.)  To the contrary, the Complaint alleges that Bright-Abu was "motivated by sexual desire." (Complaint ¶¶ 86, 88, 90, 92, 94.)

Plaintiffs argue in response that Bright-Abu could have acted within the "scope of his employment" even if his actions were not "in furtherance" of the University's interest in any way.  (Opp. at 16.)  This is legally erroneous, and is not supported by the only case they cite. Plaintiffs rely on *Brown v. Argenbright*, 782 A.2d 752, 757 (D.C. 2001), where the court found that a security guard's sexual contact with a store customer could have been "actuated, at least in part, by a desire to serve [the employer's] interest," because the guard's job required physical contact with customers.  Thus, in *Brown v. Argenbright*, the Court *applied* the requirement that the employee be motivated at least in part to advance the employer's interests, and did not abandon that long-standing requirement.

Plaintiffs completely ignore Judge Boasberg's recent opinion in *Doe v. Sipper*, Civ. No. 11-CV-875, 2011 U.S. Dist. LEXIS 127763, at *10 (D.D.C. Nov. 4, 2011), in which the Court granted an employer's Rule 12(b)(6) motion to dismiss a claim that the employer was responsible for a rape committed by one of its managers.  As explained in the Opening Brief (at 21), in *Sipper* the Court explained that District of Columbia law has only recognized a sexual assault as being within the scope of employment in two unique circumstances, neither of which applies here.

In addition, Plaintiffs have failed to even allege any facts in the Complaint from which it could be inferred that Bright-Abu's sexual misconduct was even partially motivated to further some interest of the University.  *See Sipper*, 2011 U.S. Dist. LEXIS 127763, at *15 (plaintiff must allege at least some "facts to support her conclusory statement that [Defendant] was motivated, even in part, by a desire to further [the employer's] interests by raping her").

Accordingly, this Court should dismiss all claims that rely on the theory that Bright-Abu was acting within the scope of employment, including claims stated in each Count of the Complaint.

## V.   PLAINTIFFS' NEGLIGENCE AND NEGLIGENT-SUPERVISION CLAIMS ARE LEGALLY INSUFFICIENT

Plaintiffs failed in their Opposition to respond to several of the University's contentions respecting the legal insufficiency of Count II (Negligence), which should therefore be taken as conceded.

*First*, Plaintiffs do not dispute that all negligence claims based on the theory that Bright-Abu acted "within the scope of his employment" should be dismissed if that theory is deficient as a matter of law.  (*See* Opening Br. at 22.)

*Second*, Plaintiffs do not dispute that a negligent-supervision claim cannot be based on the University's alleged failure to prevent sexual harassment.  (*See* Opening Br. at 24.)

*Third*, Plaintiffs Oni-Orisan, Rashid, and Singleton do not dispute that their negligent-supervision claims based on the University's failure to prevent Bright-Abu's "physical and verbal sexual assault tendencies" (Complaint ¶¶ 57) should be dismissed because the Complaint lacks any allegation that Bright-Abu "assaulted" them in a way that would violate common law. (*See* Opening Br. at 24-35.)

The only point disputed by Plaintiffs is whether the negligent-supervision claims of Plaintiff Woodson and Bello (besides those based on failure to prevent sexual harassment) can survive.  Plaintiffs do not dispute that, in order to hold an employer liable for the negligent supervision of its employees, a plaintiff must be able to demonstrate that the employer previously "knew or should have known its employee behaved in a dangerous or otherwise

incompetent manner, and that the employer, armed with that actual or constructive knowledge, failed to adequately supervise the employee." *Brown*, 782 A.2d at 760. (Opening Br. at 22.)

This principle – requiring the employer's prior knowledge of misconduct – requires dismissal of Woodson's claims, because nothing in the Complaint alleges that the University had prior notice of Bright-Abu's assaultive tendencies before he assaulted Woodson on September 1, 2010. (Opening Br. at 23.) Plaintiff do not address this fatal flaw in their Opposition, which should therefore be deemed to be conceded.

Plaintiffs also do not dispute that the negligent-supervision claim of Bello, relating to events prior to the April 26, 2011 meeting with Dr. Wright, should be dismissed if Plaintiffs are judicially estopped from relying on Woodson's alleged report of Bright-Abu's sexual assault on September 1, 2010 to "Mr. Thomas" on that date. (Opp. at 18.) Absent that allegation, nothing in the Complaint alleges that the University knew or should have known about Bright-Abu's assaultive behavior before his April 20, 2011 assault of Bello. (Opening Br. at 23-24.)

Plaintiffs again make a desperate argument in trying to salvage their claims of negligent supervision. They argue that "a reasonable jury could conclude that the notice provided in the April 26, 2011 meeting [with Dr. Wright] occurred prior to subsequent events taking place *after* said meeting." (Opp. at 18) (emphasis in original). The Court should reject this argument, because there is no allegation in the Complaint that Bright-Abu engaged in any misconduct toward Bello or anyone else after the April 26, 2011 meeting with Dr. Wright.

Plaintiffs suggest that the Complaint's general references to conduct by Bright-Abu occurring on "several occasions" "during the 2010-2011 academic school year" should be read to allege misconduct after April 26, 2011 (Opp. at 18 (citing Complaint ¶¶ 21, 26, 28 & 30)), since the academic year extended shortly after April 26, 2011. The Court should not follow such a

tortured reading of the Complaint. *Iqbal* requires the Court to employ "its judicial experience and common sense" in reviewing a pleading, and "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1950. *See Hajjar-Nejad v. George Washington University*, Civ. No. 10-00626 (CKK), 2012 U.S. Dist. LEXIS 1353, at *21 (D.D.C. January 4, 2012). This principle applies here, because there is no "well-pleaded" fact in the Complaint that states or implies that Bright-Abu engaged in any wrongful conduct after the Plaintiffs' April 26, 2011 meeting with Dr. Wright.

## VI.   PLAINTIFFS' CLAIMS OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS SHOULD BE DISMISSED BECAUSE PLAINTIFFS FAILED TO DISPUTE THE UNIVERSITY'S ARGUMENTS, WHICH SHOULD BE DEEMED TO BE CONCEDED

Plaintiffs failed to address any of the University's arguments that Plaintiffs failed to state a claim for intentional infliction of emotional distress ("IIED"). Accordingly, Plaintiffs have conceded that these claims should be dismissed.

Specifically, Plaintiffs failed to contest that:

• Woodson is barred from bringing an IIED claim by the applicable statute of limitations. (Opening Br. at 26.)

• Plaintiffs cannot state a claim for IIED as to Woodson and Bello because each of their allegations is based entirely on a single incident. (Opening Br. at 26-27.) Plaintiffs' citation to *Howard University v. Best*, 484 A.2d 958, 985-86 (D.C. 1984), is to no avail because that case involved allegations of "repeated" acts of sexual harassment. (Opp. at 19.)

- Plaintiffs cannot state a claim for IIED as to the three remaining plaintiffs because the mere "labels and conclusions" that Bright-Abu caused them "extreme and outrageous conduct" are too vague to plead a sufficient claim under *Iqbal*. (Opening Br. at 27.)

- There is no allegation that Bright-Abu acted "intentionally or recklessly" to expose Oni-Orisan to his sexual assault on anyone else. (Opening Br. at 27.) Nor would Bright-Abu's conduct in touching Oni-Orisan's hair and back, or a hug, constitute sufficient "outrageous" conduct to support an IIED claim. (*Id.* at 28.)

## VII.  PLAINTIFFS DO NOT DISPUTE SEVERAL OF THE UNIVERSITY'S GROUNDS FOR DISMISSAL OF THEIR CLAIMS FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Plaintiffs' claims for negligent infliction of emotional distress ("NIED") against Defendant Howard University are based on a negligent-supervision theory. (Complaint ¶ 81.) However, as explained in the Opening Brief, all the claims are based on intentional conduct by Bright-Abu, and an NIED claim cannot be based on intentional conduct. (Opening Br. at 28-29.) *See Hunter v. District of Columbia,* Civ. No. 08-303 (CKK), 2011 U.S. Dist. LEXIS 131451, at *37 (D.D.C. Nov. 15, 2011).

Plaintiffs do not dispute that an NIED claim can not proceed on a negligent-supervision theory against an employer, for its employee's "sexual assault" or "sexual misconduct," where the employee's conduct involved "an intentional tort." *Brown v. Argenbright,* 782 A.2d at 759 n. 9 ("since the [employee's] conduct alleged, even when viewed in the light most favorable to [plaintiff], is not negligence but an intentional tort, [plaintiff] cannot recover damages for negligent infliction of emotional distress based on that conduct"). Therefore, the NIED claims should be dismissed.

Plaintiffs also failed to address other fatal deficiencies in their NIED claims that were identified in the Opening Brief. For example, their allegation that each suffered "serious and verifiable emotional distress" is nothing more than a "naked assertion" that is "devoid of further factual enhancement," and therefore insufficient to state a claim. *Iqbal*, 129 S. Ct. at 1949. (Opening Br. at 30.) This is an additional ground for dismissal of the NIED claims of all five Plaintiffs.

The only point contested by Plaintiffs is whether they adequately pled that the "physical safety" of Plaintiffs Oni-Orisan, Rashid, and Singleton "was imminently endangered," as required for an NIED claim under *McMillan v. Nat'l R.R. Passenger Corp.*, 648 A.2d 428, 434 (D.C. 1994). (Opening Br. 29; Opp. at 21.) The allegations of the Complaint simply do not allege any threat of "imminent" injury to these three Plaintiffs. Bright-Abu merely "flirted" with Plaintiffs Rashid and Singleton, and there is no allegation that either knew at the time about any assault of Woodson or Bello. (Complaint ¶¶ 28, 30.)

Plaintiffs also do not contest the lack of any allegation in the Complaint that Oni-Orisan, Rashid, or Singleton were ever "in fact" in "physical danger," as required for an NIED claim. *Jones v. Howard University*, 589 A.2d 419, 423 (D.C. 1991). On this basis too, the NIED claims should be dismissed.

Indeed, Plaintiffs all but acknowledge the weakness of their NIED claims by stating that "even if all the elements of an independent [NIED] claim are not met" the "Court will consider emotional distress as an element of damages." (Opp. at 21.) They forget that there can be no award of damages unless all the required elements of liability are first pled and proven.

## VIII.  PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE DCHRA

Plaintiffs failed to contest several of the University's arguments supporting dismissal of the DCHRA claims, which should be deemed to be conceded.  In particular, Plaintiffs failed to contest the following arguments:

- Plaintiff Woodson is barred from bringing a DCHRA claim by the DCHRA's one-year statute of limitations.  (Opening Br. at 36.)

- Single incidents – even involving the sort of touching experienced by Woodson and Bello – cannot serve as the basis for a violation of the DCHRA.  (Opening Br. at 34-35 (citing, among other authority, *Chavers v. Shineski*, 667 F. Supp. 2d 116, 126 (D.D.C. 2009).)

- Isolated incidents must be "extremely serious" to serve as the basis for a violation of the DCHRA.  The harassing statements allegedly made by Bright-Abu on "several occasions" to Rashid and Singleton do not pass that threshold.  (Opening Br. at 37-38.)

- The claims of sexual harassment by Plaintiffs Oni-Orisan, Rashid, and Singleton rest upon "'naked assertion[s]' devoid of 'further factual enhancement,'" *Iqbal,* 129 S. Ct. at 1949, that cannot meet the basic pleading standard under *Twombly/Iqbal*.  (Opening Br. at 35 & n.23.)

Plaintiffs also admit that, to state a DCHRA claim, they must plead that "the employer knew or should have known about the harassment and failed to act."  (Opp. at 22; *see* Opening Br. at 32.)  *See Odeyale v. Aramark Management Services Ltd. Partnership*, 518 F. Supp. 2d 179, 183 (D.D.C. 2007).  The Complaint fails to do so if, on judicial estoppel grounds, the Court disregards the allegation in paragraph 17 of the Complaint, that Plaintiff Woodson complained in September 2010 to a supervisor.  (Opening Br. at 32-33.)

For all these reasons, the DCHRA claims of all Plaintiffs should be dismissed.

## IX.    THE ASSAULT AND BATTERY CLAIMS SHOULD BE DISMISSED

Plaintiffs do not contest the University's argument that Plaintiff Woodson is time barred from bringing her claims for assault and battery in Counts VI and VII of the Complaint. (Opening Br. at 39.) Therefore, her assault and battery claims should be dismissed.

Plaintiffs also do not dispute that the assault and battery claims of Plaintiffs Bello and Woodson should be dismissed if the Complaint failed to adequately allege that Bright-Abu was acting within the scope of his employment. (Opp. at 24-25.) Since Plaintiffs have not done so, for the reasons discussed above, Counts VI and VII of the Complaint should be dismissed. (Opening Br. at 36.)

### Conclusion

For the foregoing reasons and those set forth in the University's Opening Brief, the Complaint should be dismissed in its entirety.

Respectfully submitted,

Daniel I. Prywes (D.C. Bar 324393)
Ian L. Barlow (D.C. Bar No. 998500)
BRYAN CAVE LLP
1155 F Street, N.W.
Washington, D.C.  20004
(202) 508-6000
daniel.prywes@bryancave.com
ian.barlow@bryancave.com

Dated:  February 9, 2012               *Counsel for Defendant Howard University*

16

## CERTIFICATE OF SERVICE

I hereby certify that, on February 9, 2012, I caused the foregoing Defendant Howard

University's Reply Memorandum to be served by ECF electronic filing on:

> Christal E. Edwards, Esq.
> Edwards Legal Group, LLC
> 9701 Apollo Drive, Site 301
> Largo, MD  20774
>
> Steven Bullock, Esq.
> Law Offices of Steven Bullock
> 440 12th Street, NE, Unit 106
> Washington, D.C.  20002
>
> Jennifer M. Blunt, Esq.
> Kutak Rock
> 1101 Connecticut Avenue, NW, Suite 1000
> Washington, D.C.  20036
>
> *Counsel for Plaintiffs*

and by first-class mail, postage prepaid, to:

> Mr. George Bright-Abu
> 6236 Oscar Court
> Woodbridge, VA  22193
>
> *Defendant*

Daniel I. Prywes